JOSIAH ASBURY and Wife, MARY E. ASBURY, v. CHARLOTTE
ELECTRIC RAILWAY AND POWER CO.

(Decided December 22, 1899.)

*Damages—Personal   Injury—Negligence—Evidence—*
*Judge's Charge.*

1. The Judge, upon the issue as to negligence, properly charged the
jury that the burden of proof was upon the plaintiff to prove
the affirmative of the issue by a greater weight of the evi-
dence; and that if the evidence was evenly balanced, so that
the jury could not decide whether or not the injuries were
caused by the negligence of the defendant, they would answer
the issue, "No."

2. The Judge properly refused to charge, as requested by defend-
ant: "That if the jury are left *uncertain* by the evidence in the
case as to how the injuries to the plaintiff Mary E. Asbury
were caused, that is, whether they were caused by the negligence
of the defendant or not, they will answer the issue, 'No.'"   This
was in effect asking his Honor to charge that the evidence *as to*
negligence must amount to certainty, that is, proof satisfactory
to the jury beyond a reasonable doubt, which is not the rule
in civil cases.

3. If the premature starting of the electric car, resulting in the
injury of the female plaintiff, was occasioned by some act of
omission or commission on the part of those in charge, there
was negligence in the performance of duty.

4. Referring to the defense of contributory negligence, his Honor,
in defining due care on the part of the plaintiff, said that it
meant such care as an ordinarily prudent man would use,
placed in *"like* or *similar"* circumstances.   It was objected by
defendant that the word *same* should have been used in the
definition.   The distinction is merely verbal—the idea is the
*same,* sufficiently expressed.

5. The rule of "the prudent man" is applicable alike to females.

CIVIL ACTION for damages for personal injury received by
*feme* plaintiff, while a passenger, by the negligence of defend-

ant, tried before *Coble, J.,* and a jury, at Fall Term, 1899, of MECKLENBURG Superior Court. There was no exception to the evidence. The exceptions to the charge of his Honor are noted in the opinion. Verdict for the plaintiff for $2,500. Judgment. Appeal by defendant.

· *Messrs. Burwell, Walker & Cansler,* for appellant.
*Messrs. Jones & Tillett,* for appellee.

MONTGOMERY, J. This action was brought by the *feme* plaintiff to recover damages for injuries received by her, and alleged to have been caused by the negligence of the defend-ant. The particular allegation of the complaint is that the *feme* plaintiff was a passenger on one of the street cars of the defendant, and while she was in the act of disembarking therefrom, the servants and agents of the defendant, in charge of said car, negligently caused the car to be suddenly started forward, and that the said plaintiff, in consequence thereof, was thrown to the ground and injured.

The defendant denied the imputed negligence, and averred that plaintiff was negligent in assuming a dangerous position and in alighting from the car.

Issues were submitted to the jury upon the pleadings as follows:

1. Was the plaintiff injured by the negligence of the defendant, *as alleged in the complaint?*

2. Did the plaintiff Mary E. Asbury contribute to her injury by her own negligence?

3. What damages are plaintiffs entitled to recover?

The only evidence of the plaintiff as to the manner in which the *feme* plaintiff was injured was the testimony of herself. She said:

"I was sitting in the seat the wheels runs in towards the

front. I got up to step off the car, and found that I could not step from the floor of the car to the step or running board that was along the side of the car. There was an obstruction there, and I stepped up on it. I was holding on to the seat in front of me, and to the seat behind me. The obstruction I stepped upon, I suppose was a box for the wheels to run under. Just as I lifted my foot to step down from this obstruction to the running board the car moved, and it seemed to be a jerk of the car. There was no warning to me of the movement of the car. The conductor had not come and offered me assistance to get off. I was holding on at the time and was dashed to the ground when the car jerked. There were three steps to go up from the place I fell in to the sidewalk. The car had come to a full stop before it started again. I only know that I just had time to stand up till it started. At the time I felt the jerk, I had not stepped down on the running board or side step, and when I felt the jerk I was in the act of stepping. I had just raised my right foot to step down on the running board, and I had my hand on the back of the seat in front of me, but do not know what I had hold of behind me. I was holding on with both hands. The conductor was standing on the running board. I fell from the car, and not from the running board. The conductor did not assist me to rise when I fell to the ground. He did not offer any assistance. He was on the ground when I pulled myself up, but offered no assistance. If he brushed the dirt from my dress, I did not know it. The ditch I fell in is on the side of the Boulevard, between the sidewalk and the track. I did not fall in the ditch, but was dashed out a right good distance from the car. There was a conductor and a motorman on the car, and a man sitting in the front seat by the motorman on the same side that I was sitting. There was no one else on the car."

The defendant's evidence as to how the plaintiff was injured was the testimony of J. E. Hunter, the conductor, E. E. Gribble, the motorman, W. T. Greene, who was on the car and learning to be a motorman, and Miss Lucy Lookabill. The witness Hunter testified that the *feme* plaintiff directed him where to stop the car, and that he stopped it at that point; that she made an effort to get off; she got up and took hold of the post of the car with her left hand, and then stepped from the car down on the running board, and then she had to turn her hand loose from the post before she could reach the ground, and when she turned the post loose she fell right out in the street. She had too high a hold on the post to reach the ground, and when she turned loose she fell. She had hold of the post with her left hand, the post being by her left side. "I took her by her left arm, and assisted her to get up. After she got up, I asked her was she hurt, and she said that she thought her hip was hurt. I asked her did she step on her skirts, and she said that she did not think that she did. I helped her to the sidewalk. She dropped her parasol when she fell, and I picked it up, and handed it to her. I did not go further than the sidewalk with her, as she seemed to be able to go. She limped. She had gone up on the sidewalk when I left her to go back to the car. I then went back to my car. From the time I stopped the car till I went back from the sidewalk to the car and started the car, it might have been a minute. From the time I stopped the car for her to get off till I went back from the sidewalk to the car, the car never started, and was not in motion in any way." That the place he stopped was on a dead level; she stumbled over the running board and fell on the ground; she fell when she turned loose her left hand, and I thought she might have stepped on her dress in stepping on the running board.

ASBURY v. RAILWAY CO.

The witness Gribble testified:

"I was the motorman on the car. I had been in the service of the company four years this coming July. I stopped the car at Cleveland avenue, after getting the proper signal to stop. I shut off the current and applied the brake, which is the way to stop the car. I saw the plaintiff fall. I stopped the car, and was holding the brake in my right hand. We had stopped a considerable time, and I heard the conductor say, 'this is the place.' I shoved the brake a little further forward, and set it. The car was right still. I looked back over my shoulder, and saw Mrs. Asbury standing on the running board of the car, and holding to the post with her left hand. She was in the act of stepping off the running board to the ground when she fell. In making the step her hand left the post, and she fell. I saw the conductor when I first looked around, and he was standing on the ground. Mrs. Asbury was facing him. When she fell he assisted her in getting up, and asked her how came her to fall—if she stepped on her skirt. He stooped and picked up her skirt and shook the dust off it, and also picked up her parasol and handed it to her. He asked her if she thought that she could go along, and she said that she thought she could. He walked with her over to the sidewalk. I think he held on her arm to the sidewalk, though I am not positive about this. I saw her parasol on the ground. From the time the car stopped till the conductor came back the car never started, and was not put in motion in any way. The only thing that could have started the car was to have released the brake and applied the current, and I neither released the brake nor put on the current. The ditch is about forty to fifty feet from the first rail. The Boulevard is very wide—much wider than Tryon street."

The witness Miss Lookabill testified:

"I live in Dillworth, and know the place where Mrs. Asbury got hurt, which is about seventy-five yards from my

home. I was on the back porch, and heard the car coming, and also heard it stop. When I looked I saw the lady, and the conductor was brushing her sleeve. From the time I heard the car stop till I saw the conductor brushing her sleeve, I never heard the car move—I could have heard it from there perfectly. Mrs. Asbury was coming towards our house when I saw her. When I saw the conductor brushing the dirt off her sleeve, she was very near the car. The unusual length of time the car stopped attracted my attention. There is no ditch at that place." On cross-examination: "I was standing on the back porch." On redirect examination: "Mrs. Asbury asked me if she was not in the ditch when I saw her, and I told her in reply, that there was no ditch there."

The witness Hunter was recalled, and said: "I was on car No. 14, and saw this car last night. There is no iron wheel cover or box on that car like Mrs. Asbury spoke of. The defendant has three cars which have the boxes as described by plaintiff, and three cars without them. The cover, or box, over the wheel is a little larger than this book."

And the *feme* plaintiff further said that the motorman and Greene were laughing and talking, and paid no attention to her.

If this Court were permitted to criticise the verdicts of juries, we might have something to say concerning the one delivered in this case, but that is forbidden ground to us, and we can only review the instructions of law given in the court below upon the evidence.

His Honor made no mistake in the law laid down to the jury for their guidance. The charge was fair to both sides, and it was full and very clear. The defendant's first exception was to the refusal of the Court to give their second prayer for instruction, which was in these words: "That if the jury are left *uncertain* by the evidence in the case as to how

.the injuries to the plaintiff Mary E. Asbury were caused, that is, whether they were caused by the negligence of the defendant or not, they will answer the first issue, 'No.' " The prayer was equivalent to a request of the Court to tell the jury that unless the plaintiff's evidence produced to a certainty the conviction that her injuries were caused by the negligence of the defendant that they should decide the first issue in favor of the defendant; or, in other words, that the plaintiff was required to make out her case beyond a doubt. That is not the rule. His Honor had told the jury in the opening of his charge that the burden was on the plaintiff to prove the affirmative of the first issue by a greater weight of the evidence; and in compliance with the defendant's third prayer he told the jury that if the evidence in the case was evenly balanced, so that the jury could not decide whether or not the injuries were caused by the negligence of the defendant, they would answer the first issue, "No." The defendant has nothing to complain of in the refusal of his Honor to give their second prayer for instruction.

The defendant's second, fourth and fifth exceptions are directed to one and the same view of the case, and they can be discussed together. The alleged error pointed out by these exceptions, is, that as the complaint of the plaintiffs alleged and charged *active* negligence of the defendant's conductor and motorman, in that they caused, actively, the motion of the car, and as there was no charge of defective machinery by which the car might have moved itself if there had been any negligent *omission* of duty on the part of the defendant's employees, that his Honor should have directed the jury that if the car did not move by the positive act of the defendant's servants, they should answer the first issue, "No;" and that he should not have added the modification to that request, the legal proposition that a want of due care—simple passive negligence—also would make the defendant liable.

The contention of the defendant is, that as the plaintiffs' complaint alleged that the defendants had negligently *caused* the car to be suddenly started forward, that therefore, if they permitted the car to start forward *through want of due care* on their part, that that would not be causing it to start, and that therefore there would be a variance between the allegations of the complaint in reference to the negligence of the defendant upon the evidence brought out in the case and the instruction of the Court. It seems to us that there could have been no difference between the motorman's actually turning on the current and moving on the car by his volition, and the failure on the part of the motorman to exercise due care in the management of the machinery so as to prevent the car from moving through his negligence. In both cases the negligence of the motorman and conductor, whether of *omission* or *commission,* caused the car to start. The defendant further complains, under that head, because his Honor did not explain what due care meant to the jury, and also did not tell the jury what act of the defendant's servants, or what omission to act in the particular case, would be negligence. But his Honor told the jury in his charge that due care meant "such care as an ordinarily prudent man, placed in circumstances *like or similar* to those in which the person whose conduct is in question was placed, would use;" and in reference to the exception that his Honor did not tell the jury what act of the defendant's servants, or what omission to act in the particular case, would be negligence, we find in the charge that his Honor instructed the jury that, "It is the duty of the employees of a street car company, in charge of a car, when they stop a car for passengers to get off, not to start the car until they see that passengers, who have arisen from their seats to get off, have gotten off, and a failure in the performance of this duty is negligence on the part of the company." And he further

instructed the jury that, "If the jury find from the evidence that the employees of the defendant in charge of the car in question stopped the same for the *feme* plaintiff to get off at the place she requested, that after they stopped the car the *feme plaintiff* arose from her seat to get off the car, and that, after she arose from her seat to get off, the said employees did not cause the car to start or move, and did not, through any want of due care, permit the same to move until she was entirely off the car, then the jury will answer the first issue, 'No.'"

The defendant further contends that his Honor, when defining the meaning of due care to the jury said that it meant such care as an ordinarily prudent man placed in circumstances *like or similar* to those, etc., gave a faulty definition, and they insisted that he should have used the word *same* instead of the words *like* and *similar*. The words "like and similar" were full and sufficient. *Ellerbe v. Railroad Co.,* 118, N. C., at p. 1026; *Hinshaw v. Railroad, Ibid,* at p. 1055. Under the head of due care, the defendant contended further that when his Honor laid down the rule of "the prudent man" in reference to the conduct of the *feme* plaintiff at the time of her injury, he committed error. The argument was that the definition of due care was misleading "as the care to be exercised by a *woman,* when she is placed in a dangerous position, would be greater than that required of a *man* surrounded by the same circumstances; that she is supposed to be less able to take care of herself than he is, and the danger to her will therefore be greater; that when this is the case, that is, when the danger is greater, the law requires a greater degree of care to be exercised in avoiding it." And the case of *High v. Railroad* was cited as an authority for that position. The woman there was injured by an engine, while walking, on a windy day; she was wearing a bonnet which prevented her

ASBURY *v.* RAILWAY CO.

from hearing well, and this Court held that that gave her no greater privilege than she should otherwise enjoy as licensee, but on the contrary should have made her more watchful. There is nothing in that decision which even squints toward a holding that a woman is not bound by the rule of "the prudent man," but ordinarily by a stricter rule.

There remains for consideration the third exception of the defendants, which is as follows: "The defendant requested the Court to charge the jury: If the plaintiff was standing in the position in the car as testified by her, and if this was a dangerous position, and would have appeared to be dangerous to any person in the exercise of ordinary care, or such care as a prudent person would exercise under such circumstances, and this proximately contributed to her injuries, the jury will answer the second issue, "Yes." The Court refused this instruction, and modified it by inserting therein after the word "injuries" and before the words "the jury," the words "and if she could by due care have avoided taking such position," which will appear in the instruction numbered five, as given by the Court, and above set forth. There was no error in his Honor's modifying the prayer as he did.

No error.