ELLSWORTH AIKEN *vs.* HOLYOKE STREET RAILWAY
COMPANY.

Hampden.    September 24, 1901. — October 18, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Practice, Civil*, Submitting case to jury.  *Negligence*, Contributory, On street railway.

If in a jury trial there seems to be danger that the jury will give an unjust verdict
upon evidence which in law ought to go to the jury for their decision, the proper
course for the presiding judge is to submit the case to the jury and, if the ver-
dict is against the evidence or the weight of evidence, to set it aside, and not to
order a verdict.

In an action by a boy six years old to recover for injuries caused by collision with
a street car, the plaintiff was asked on cross-examination "So, that very moment
you got hurt you were playing tag?  You were n't going home then, were you?"
and answered "No, sir, not when I got hurt."  *Held*, that a jury could find that
this was a negative answer to the question whether the plaintiff was playing
tag when he got hurt, and thus supported the plaintiff's contention that he had
stopped play before he attempted to cross the street.

For a boy six years old to run across a street on his way home from school and
not to see an electric car that has come round a corner, is not negligence as a
matter of law, and does not preclude a finding that the boy was in the exercise
of such care as might be expected from an ordinarily prudent child of his years.

For an electric car to enter a street from a corner at a speed of from two to five
miles an hour without the motorman giving warning of the entrance of the car
into the street by ringing the gong, is evidence of negligence to be passed upon
by a jury.

In an action against a street railway company for injuries alleged to have been
caused by the negligence of the defendant's motorman, there was evidence that
the plaintiff, a boy six years old, was either playing in a street or running across
the street on his way home, when he was run into by an electric car of the de-
fendant which had come round a corner into the street, at a speed of from two
to five miles an hour, that to save himself the plaintiff climbed upon the front
step of the car and clung there begging the motorman to let him off, and that
the motorman instead of stopping or attempting to stop the car increased its
speed and so caused the plaintiff to be thrown to the ground and run over.
*Held*, that on this evidence the defendant could be found to be liable for the
injuries to the plaintiff.   If the plaintiff while at play carelessly ran into the car
and in attempting to save himself from injury found himself upon it, the de-
fendant had no right to disregard his peril when informed of it, and run its car
as if nothing had occurred.

TORT by an infant by his father and next friend to recover
for personal injuries caused by the plaintiff being run into by
or thrown from an electric car of the defendant through the

alleged negligence of the defendant and its servants. Writ dated July 6, 1898.

The declaration contained three counts which, omitting certain introductory allegations, were as follows:

The first count alleged, that the plaintiff was a child of the age of six years, and was lawfully on a public street in the city of Holyoke, in the exercise of due care and that the defendant negligently and carelessly ran into the plaintiff, whereby the plaintiff was hurt.

The second count alleged, that the plaintiff was a child of the age of six years, and was running across Appleton Street; that the defendant's car came around from High Street on to Appleton Street, so that the plaintiff and the defendant's car came into collision; that the plaintiff caught hold of the handle of the front of the defendant's car to save himself from falling under the wheels; that it was the duty of the defendant to conduct itself under the circumstances with due care and regard to the plaintiff's safety; but that it negligently failed so to do, but kept its car along the way, increasing its speed and dragging the plaintiff along with the car; that the plaintiff was finally thrown under the wheel and greatly hurt; that the plaintiff was himself in the exercise of due care; and that the defendant was negligent.

The third count alleged, that the plaintiff was crossing Appleton Street in Holyoke; and in so doing came in contact with one of the defendant's cars, and to save himself from falling caught hold of the car and got upon a step of the car; that the defendant's servants thereupon recklessly, wantonly, and with gross disregard to the plaintiff's safety, started up the car, causing it to shake, and recklessly, wilfully and wantonly, with gross disregard of the plaintiff's safety, threw him upon the ground and under the wheels of the car, whereby he was greatly injured, and that the plaintiff himself was in the exercise of due care.

The case was tried in the Superior Court before *Pierce*, J. At the close of the plaintiff's evidence, the judge, at the request of the defendant, ruled that the plaintiff could not recover on the first two counts of the declaration; and the plaintiff excepted.

At the close of all the evidence, the judge ruled that there

was no evidence to be submitted to the jury and directed a verdict for the defendant, and, by agreement of counsel, reported the case for the consideration of this court. If the ruling of the judge was correct, the verdict was to stand ; otherwise, the case was to be remanded to the Superior Court for trial.

At the time of the accident the plaintiff was six and one half years old. The material portions of the evidence are stated in the opinion of the court.

*A. L. Green*, (*F. F. Bennett* with him,) for the plaintiff.

*W. H. Brooks*, ( *W. Hamilton* with him,) for the defendant.

BARKER, J. The accident occurred on April 20, 1898, and the suit was brought on July 6, 1898. The trial, a report of which is before us, seems to have been a second trial of the case, and it took place in January of the present year. The declaration is in three counts. At the close of the plaintiff's evidence the judge at the request of the defendant and without requiring the defendant to rest ruled that the plaintiff could not recover on the first two counts of the declaration. At the close of all the evidence the judge ruled that there was no evidence to be submitted to the jury and directed a verdict for the defendant and by agreement of counsel reported the case to this court. By the terms of the report if the ruling was correct the verdict is to stand, otherwise there is to be a new trial.

Strictly speaking, the ruling given at the close of all the evidence was a ruling as to the third count alone and the report might be construed to bring here only that aspect of the case. It has not been so treated by counsel. Their briefs and arguments have been addressed to all aspects of the case, the rulings as to the first two counts as well as to the last. We therefore assume that the report was intended to bring here all the exceptions taken at the trial in behalf of the plaintiff.

While the report shows that the evidence was very contradictory, the following facts are not now disputed. The plaintiff, a school boy about six and one half years of age, after leaving school in the afternoon and before reaching his home was run over by one of the defendant's vestibuled electric cars near the intersection of two streets in the city of Holyoke. These streets crossed each other at right angles, and the course of the car was from one street into the other, and the plaintiff was run

over very soon after the car had rounded the corner into the street on which the schoolhouse was situated from which the plaintiff had been dismissed at the close of his school. After leaving school the plaintiff with some other boys of his age had been playing tag almost if not quite up to the time of his contact with the car, the boys using as the playground a lawn between the street and a church building standing on the corner of the two streets. The plaintiff's contention was that just before the accident he had ceased play and started to go to his home, and that when he came into collision with the car he was crossing the street upon the crosswalk at the intersection of the streets for the purpose of going to his home.

One contention of the defendant was that the plaintiff was trying to steal a ride upon the car, and that having got upon the front step he fell from it and was run over. Another contention of the defendant was that the plaintiff if not trying to steal a ride was playing tag in the street and ran into the car while so engaged in play. The defendant also contended that the plaintiff, if neither trying to steal a ride nor playing in the street but attempting to go to his home, ran into the car so carelessly that he could not recover for his injury. The plaintiff also contended that even if he first came in contact with the car while he was playing in the street, that after such first contact he was so placed on the car and gave such notice of his peril to the motorman as to make it the defendant's duty to stop the car and let the plaintiff off, and that, on the contrary, the motorman upon seeing the plaintiff's position and hearing his request to be let off increased the speed of the car and so caused him to be thrown from the car and run over. The third count of the declaration was treated at the trial and upon the argument of the case here as founded upon this contention.

Every one is aware that among the many suits brought to recover for personal injuries there are cases, of which we do not intimate that the present one is an instance, in which unjust claims are sought to be sustained by testimony which if not wholly false or manufactured is so colored and distorted as to tend to mislead juries and judges and to pervert justice. Yet the plaintiff in such a suit has the right to have his alleged cause of action determined by a jury if upon any reasonable

view of the conflicting evidence it can fairly be found as a fact that he was hurt while in the exercise of due care and by the defendant's fault. If in any jury trial there seems to be danger that the jury will give an unjust verdict upon evidence which in law ought to be submitted to its decision, the proper course is to take the verdict and then to set it aside as against the evidence or the weight of the evidence, rather than to order a verdict. There is no justification for the latter course in a suit in which it does not appear that any wrong verdict has ever been taken. In the present case therefore the question for us is whether upon any fair view of the reported evidence there might have been a finding for the plaintiff upon either count of his declaration.

Of course in dealing with the evidence the jury could find to be true any statement testified to by a witness, although disbelieving some or all of the other statements made by the same witness. Examining the evidence with this rule in mind, it is plain that the jury could find from it that the plaintiff when he came in contact with the car was neither playing tag in the street nor attempting to steal a ride.

The witnesses called for the plaintiff who testified to seeing the accident were Joseph Rivers, Michael F. Kelley, Bertie Oberlander, Emil Lanthier, and the plaintiff himself. All of these witnesses testified to the playing upon the church lawn, and to the plaintiff's running across the street and coming in contact with the car. But none of the statements of the first four of these witnesses are necessarily inconsistent with the theory that when the plaintiff started to run across the street he had ceased to play tag, and was on his way home. No one testified that the plaintiff was then chasing any other boy or that any one was trying to catch him. The defendant contends that the plaintiff himself in his own testimony conclusively admitted that he was playing tag when hurt. But all of his testimony was to be considered, and he testified " I started to go home after I played tag "; and when by an ingenious series of double questions, after so testifying he was brought to say, " We were shacking " and " Yes, sir," there followed these questions and answers: " *Q.* So, that very moment you got hurt you were playing tag? You were n't going home then, were you? *A.* No, sir, not when I

got hurt. — *Q.* If the other boy had caught you in time you would have been 'it,' and you would have played some more? *A.* No, sir." We think, and certainly a jury could so find, that the answer "No, sir, not when I got hurt" was a negative answer to the question, "So, that very moment you got hurt you were playing tag?" and that the last "No, sir" supported the plaintiff's contention that he had stopped play before he attempted to cross the street. Besides this it is to be remembered that in "tag" the object of the pursued boy is to avoid being touched by his pursuer, and that the plaintiff if still playing tag would not be likely to board a car moving not more than at five miles an hour. One witness called by the defendant testified with great positiveness that the plaintiff was standing on the street before the car got around the corner and as it was rounding the corner; "standing about half ways between the track and the curbing." If this last piece of testimony cannot be considered because given after the ruling that the plaintiff could not recover on the first or second count, it shows that the granting of that request without requiring the defendant to rest was in fact prejudicial to the plaintiff. But without that evidence and upon the case as it stood when the plaintiff rested we think it could be found from the evidence that when the plaintiff left the lawn and started across the street he had ceased his play and was a traveller using the highway to return to his home.

Considering the tender age of the plaintiff, if he was not engaged in play, he could not be said as matter of law to have been guilty of negligence in running across the street on his way home. It could be found from the evidence that when he ran from the lawn the car had not yet entered the street, and it does not appear that there was any other vehicle in the street with which there was danger of his coming into collision. It cannot be held as matter of law that for a child of six or seven years to run across a street on his way home from school is of itself negligence. He himself testified that his attention was attracted by the whistle of steam cars which were crossing the same street at a more distant point, and neither the fact that he was running, nor that he did not see the electric car, precluded a finding that he was in the exercise of such care as might be expected from an ordinarily prudent child of his years.

Considering next the question of the defendant's negligence, the evidence would justify a finding that the car turned into the street across which the plaintiff was running without sounding a gong, and at a speed variously stated by different witnesses, the lowest estimate being two miles an hour and the highest five. Whether due care on the part of the defendant would require it to give warning of the entrance of the car into the street by ringing the gong was a matter peculiarly within the province of the jury to determine. It could not be said as matter of law that the gong did sound, nor, if it did not, that the omission was not negligent. If the gong did not ring and if the omission to sound it under the circumstances was negligent, it might be found, if the plaintiff was in the exercise of due care and had ceased play and was running home, that his injury was the defendant's fault. So too with reference to the cause of action attempted to be maintained under the third count, we think the evidence presented a case for the jury.

It certainly could not be said as matter of law, upon the evidence, that the plaintiff was hurt while attempting to steal a ride upon the car. If while at play he carelessly ran into the car, and if in attempting to save himself from the consequences of such a collision he found himself upon the car, the defendant could not rightfully disregard his peril if informed of it, and run its car as if nothing had occurred. The defendant had no right to the exclusive occupation of the street. It was at all times bound to use due and reasonable care to see that its car by its motion caused no unnecessary damage to persons rightly in the public street. There was abundant testimony that before the plaintiff was finally thrown from the car he was upon the step in a place of comparative safety very near to and in full view of the motorman and requesting the motorman to let him off, and that the motorman instead of stopping or attempting to stop the car increased its speed and so caused the plaintiff to be thrown to the ground and run over. To be sure this testimony was contradicted. But whether it was true or not was a question for the jury. If it was true and if the plaintiff was not a trespasser attempting to steal a ride, to disregard the peril of a child of less than seven years of age who by his own careless collision with a street car was clinging frightened upon the

step and to the handle of the car, calling for his mamma and to be let off, and to increase the speed of the car instead of attempting to comply with the child's request, is a course of conduct of such a clear and direct tendency to inflict serious injury as to be actionable, when practised by one traveller toward another in a public street where both were lawfully present.

*Case to stand for trial.*