EDWARD T. BACON, executor, *vs.* CHARLES N. BACON.

Middlesex.   December 4, 1901. — March 1, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Will,* Undue influence. *Evidence,* Burden of proof.

Where a will is contested on the grounds of unsoundness of mind and undue influence the burden is on the executor to prove soundness of mind and on the contestant to prove undue influence.

Some influence may be exercised upon a testator by a devisee or legatee which is not undue.

APPEAL from a decree of the Probate Court for the county of Middlesex allowing the will and codicil of Sarah A. Bacon.

The case came up on exceptions taken in the Superior Court to the refusal of *Sherman,* J., to make certain rulings in regard to the issues of fact tried in that court.

*G. L. Mayberry & F. L. Washburn,* for the appellant.

*A. F. Butterworth,* for the executor.

LATHROP, J.   This is an appeal from a decree of the Probate Court, admitting to probate two instruments purporting to be the will and codicil of Sarah A. Bacon.   The usual issues were framed by a single justice of this court, and were sent to the Superior Court for trial.   The case was there tried, and the jury answered the issues so as to sustain both the will and codicil; and the case is now before us on the appellant's exceptions to the refusal of the judge presiding at the trial in the Superior Court to give three rulings requested.

The testatrix died in April, 1900, and was then eighty-three years old.   The will was executed on September 28, 1899, and the codicil on October 6, 1899.   In 1894, Mrs. Bacon had made another will, by which she gave all her real estate in Winchester to her husband John H., and the residue of her estate in trust,

the income to be divided, during their lives, between John H. and her son Edward T. Bacon. In August, 1899, her husband died, and by the will in question, made the following month, she gave her real estate in Winchester to her son Edward T. Bacon, and the residue of the estate, after certain specific bequests, to him as trustee to divide the income between himself and his brother Alonzo P. Bacon during their lives and the life of the survivor, with remainder over to her daughter, Syrena L. Fowler. The codicil merely changed some small bequests.

There was evidence that Edward and Alonzo had spent considerable sums of money for the support and comfort of their father and mother, and that in 1884 Edward, at the request of his parents, returned from California, where he was living, and lived with and took care of them during their lives. Before the will was executed, Alonzo and Edward had lost most of their property. Charles N. Bacon, who contested the will and codicil, was a man of considerable means. It did not appear that he had given his father or mother money, except to make them a yearly present of ten dollars. He had done some ploughing and work of that kind for them, and at their golden wedding had sent them a tub of butter. He lived within a few minutes' walk of his mother's house, but did not see her often, and did not call upon her during the last five days of her illness.

There was evidence that shortly before making the will the testatrix had stated to various persons that she had to rely wholly upon Edward, and depended upon him in all her business transactions, and that she did not know what she would do without him as he was both son and daughter to her.

Edward T. Bacon testified that he and his mother talked over the making of the will, and that, using the will of 1894 as a form to go by, he wrote a memorandum of the provisions of the will in question, and took it to an attorney in Boston, who prepared a draft of the will, which the witness took home; that afterwards some changes were made in it, but he could not say what the changes were, nor could he remember what his mother said to him with regard to the provisions of the will, nor designate any particular change that she authorized to be made. He further testified that, after the death of his father, his mother said to him that some changes ought now to be made in her

will; that in making the memorandum above stated he followed his mother's dictation; that after the first draft of the will was made he took it home and read it to his mother, who directed the changes to be made.

The testimony as to the soundness of mind of the testatrix was what is often found in a case like this. That for the contestant was to the effect that she had been ill from December, 1898, to the last of February, 1899; and that during this time and afterwards there was some impairment of her mental faculties; that after her illness various persons, who had known her intimately for years, called upon her and found her unable to recognize or remember them. For the executor the attending physicians testified that she was of sound mind. Several witnesses testified that they often called upon her, and they always found her mind alert, and that she discussed matters of general interest; that she frequently wrote letters with her own hand; and several of these letters written during the fall when the will and codicil were made were put in evidence.

On this state of the evidence, the contestant made three requests for instructions. The first one was not discussed on the brief, nor insisted upon, and we regard it as waived. The second and third were as follows:

2. "If the jury find that Edward T. Bacon exercised any influence over the testatrix which tended to induce her to make this will, the burden of proof is on the party setting up the will to satisfy the jury by a fair preponderance of the evidence that she had sufficient mental capacity to enable her to resist that influence.

3. "If the jury should find that the mental capacity of the testatrix was such that she was capable of executing a will, if left to herself and free from outside influences, and should also find that some influence was brought to bear upon her by her son Edward in favor of this will or certain parts of it, but that such influence would not be sufficient to control a mind in its normal condition, so that neither the loss of mental capacity nor the influence exerted over her by Edward would alone be sufficient to render the will invalid, and yet the jury should find that, taking the two together, the act of the testatrix in making the will was not her free and voluntary act, then they would be

warranted in finding that the will was executed under undue influence."

These requests were not given in terms, but the presiding judge charged the jury fully on the question of soundness of mind, reading from the opinion of Chief Justice Cockburn, in *Banks* v. *Goodfellow*, L. R. 5 Q. B. 549, 567, where are cited several cases from courts in this country; and also reading to the jury the charge of Mr. Justice Allen in *Whitney* v. *Twombly*, 136 Mass. 145, 146, (which was held by the full court to be accurate and sufficient,) and stating the law on the subject in his own language fully and accurately. The same is true of what was said in the charge on the question of undue influence. As bearing upon the requests for instructions, it is necessary to refer to the concluding portion of the charge: "You are the judges to determine these two questions submitted here: Whether she was capable of making a will, and whether she made such a will as she wanted to make? that is the question — was that her will or was that Edward's? If she had not mind enough to make a will, of course, your finding will settle the controversy. If she had, then was that mind, whatever its strength, so controlled by Edward that an entirely different will was made from what she would have made? You may consider also as bearing upon that question the will of 1894. You have heard the will of 1894 read and know what it is." The judge further instructed the jury that the burden of proof was on the executor on the issue of testamentary capacity; and upon the appellant upon the question of undue influence. No exception was taken to any part of the charge.

Passing then to a consideration of the second and third requests, we are of opinion that they were properly refused. The second request, if given, would have tended to mislead the jury. The burden of proof was on the executor to prove soundness of mind, and on the contestant to prove undue influence, and so the jury were instructed. While there is some conflict of authorities in other jurisdictions on the question of the burden of proof, where undue influence is alleged, there is none in this Commonwealth. *Baldwin* v. *Parker*, 99 Mass. 79, 87. *McKeone* v. *Barnes*, 108 Mass. 344. *Davis* v. *Davis*, 123 Mass. 590, 598. The request is also misleading in using the language " any in-

fluence which tended to induce her to make this will." A will is not to be set aside because some influence is used by a devisee or legatee; but undue influence must be shown to accomplish this result. *Hall* v. *Hall*, L. R. 1 P. & D. 481. *Parfitt* v. *Lawless*, L. R. 2 P. & D. 462. *Wingrove* v. *Wingrove*, 11 P. D. 81. *Boyse* v. *Rossborough*, 6 H. L. Cas. 2, 48, 49.

We are further of opinion that the third request was properly refused. It disregards the difference between influence and undue influence. It says in effect that if the jury should find that the testatrix was of sound mind and no undue influence was used, they might find that undue influence was used. It is undoubtedly true that a person may be of sufficient capacity to make a will, if let alone and not unduly influenced, and yet not of sufficient capacity if unduly influenced. And it is also true that in determining whether influence is lawful or unlawful regard is to be had to the condition of mind and body of the person upon whom the influence is exerted. *Griffith* v. *Diffenderffer*, 50 Md. 466, 480. See also *Mooney* v. *Olsen*, 22 Kans. 69. But this was not the case put by the request. So far as the request relates to the requirement that the will and codicil should be the free and voluntary act of the testatrix, it is fully covered by the portion of the charge which we have cited.

*Exceptions overruled.*