LIZZIE A. HAYES, executrix, *vs.* JOHN B. MOULTON
& others.

Worcester. January 21, 1907. — February 26, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Will,* Undue influence and fraud. *Practice, Civil,* Conduct of trial, Exceptions.

The fact, that the provisions of a will are different from the previously expressed purpose of the testator or from what such provisions would have been if the testator, besides being in the full possession of his faculties, had acted under independent advice, does not require that the will should be set aside. A testator has a right to change his mind and to select his own advisers.

It is proper for a presiding judge to refuse a request for an instruction to the jury which assumes the truth of facts in dispute.

It is proper for a presiding judge to refuse a request for an instruction to the jury which, by asking him to emphasize in his charge certain portions of the evidence, attempts to put into his mouth an argument for the contention of the party making the request.

At a trial of the usual issues as to the validity of a will the contestants asked the judge to instruct the jury as follows : " If it is shown that at the time of the execution of the will the testatrix' mind was enfeebled by age and disease, even though not to the extent producing mental unsoundness, and the testatrix acted without independent and disinterested advice, and in the presence of the beneficiary under her will, and such gift was of the whole or a large portion of the testatrix' estate, and operated wholly or substantially to deprive those having a natural claim upon her bounty of all benefit in her estate, these circumstances authorize the jury to find the will void through undue influence without proof of specific acts and conduct on the part of the party charged with exerting undue influence." The judge in his charge to the jury made it plain to them that they might infer undue influence from the facts mentioned in this request if they found these facts to be proved and chose to draw such an inference. *Held,* that this was as far as it was the duty of the judge to go.

A person may have sufficient capacity to make a will if let alone and yet not be of sufficient capacity to resist the pressure upon him of strong influence, and the question whether the use of such influence is lawful often may depend upon the condition of mind and body of the person upon whom it is exercised ; but this does not make it improper for a presiding judge to refuse to instruct the jury that " the question of undue influence and mental incapacity cannot be separated where the testatrix was of advanced age and suffering from a disease affecting her brain and vital powers."

Under R. L. c. 173, § 80, a presiding judge has no right to tell the jury that the testimony of a witness is open to the gravest doubt.

At a trial of the usual issues as to the validity of a will, which left all the property of the testatrix to a niece who had lived with her during her last illness, the contestants, who were the excluded nephews and nieces of the testatrix, asked the judge to instruct the jury that the fact that the favored niece stood in a relation of trust and confidence to the testatrix, who asked her advice, which the

niece gave to her own advantage and to the injury of all other relatives, would warrant the jury in disallowing the will. The judge refused the request. *Held*, that the refusal was right; that it was a question for the jury to determine whether and how far there was a relation of trust and confidence between the favored niece and the testatrix, that, if the jury found this fact to be as contended by the contestants, it would be a material circumstance for them to consider and they would be warranted in saying that the will should not be sustained without proof to their entire satisfaction that it expressed the real intention of the deceased, which was not the instruction requested.

On exceptions merely to the refusal by a presiding judge of requests for instructions, if the requests were refused properly, it is not open to the excepting party to argue that the instructions given by the judge might be taken in a broader sense than is consistent with the law.

APPEAL by Lizzie A. Hayes, named as executrix, from a decree of the Probate Court for the county of Worcester refusing to allow for probate an instrument purporting to be the last will of Susan H. West.

A single justice of this court sent the case to the Superior Court for trial upon the following issues:

1. Was the instrument purporting to be the last will of Susan H. West duly executed according to law?

2. Was Susan H. West of sound and disposing mind and memory at the time of the execution of the alleged will?

3. Was the alleged will procured to be made through the fraud or undue influence of Lizzie A. Hayes?

The issues were tried before *Aiken*, C. J. By the alleged will all the property of the testatrix was left to Lizzie A. Hayes, who also was made sole executrix.

It appeared that at the time of the execution of the alleged will, which occurred on June 28, 1904, Susan H. West was seventy-seven years of age and was then in the last stages of chronic Bright's disease, from which she died within a month thereafter, on July 26, 1904. She was the widow of Henry D. West, who died in 1899, and who had been for many years a practising physician in Southbridge. They had had three children, two of whom died in infancy and the third died in 1882, at the age of thirteen years.

Since the death of her husband, Mrs. West had lived alone on the premises which she and her husband had occupied for many years. She was the last of a family of ten children, of whom eight left children surviving her, some of whom resided near

her and most of whom lived within this Commonwealth. She was on good terms with her nephews and nieces, with possibly one exception, a nephew of whom it did not appear that she had heard for several years. She always was interested in seeing or hearing from them and corresponded with several of them more or less regularly down to the time of her last sickness in May, 1904, and she was well aware that most of them were in very ordinary and some of them in poor financial circumstances.

Some time before her husband's decease she and her husband had made mutual wills, and several witnesses, who testified for the respondents, said that after her husband's death Mrs. West had stated repeatedly to several of her neighbors and friends, down to within a few months of her last sickness, that she never should make another will; that she had no favorites among her nephews and nieces; that she would not leave all her property to any one of her relatives and that she thought all of them should share in it. Her estate consisted of the property which she took under the will of her husband, comprising the dwelling house and lot which they had occupied, unincumbered, and valued at about $8,000, and cash on deposit in various savings banks, amounting at the time of her death to about $3,000, making the total value of her real and personal estate between eleven and twelve thousand dollars.

During the progress of the disease from which she finally died, she gradually failed and during the last two years of her life she complained at various times of headache, dizziness and pains on her left side, and on at least two occasions during these dizzy terms she had fallen wherever she happened to be. About the middle of May, 1904, she had a severe attack in the form of a stomach trouble, and she was so far unable to get about or care for herself that some of her neighbors brought in a part of her meals and urged upon her the necessity of having some one with her to care for her. For a while she had a young girl to take care of her, and then sent for her niece Lizzie A. Hayes.

Mrs. Hayes, in her own behalf, testified, that she was fifty-seven years old; that she lived with Mr. and Mrs. West for about five years from the time she was twelve years old; that her aunt was a peculiar woman; that she could not have lived with her and have been very happy; and that she never saw anybody

that went there that got along very well with her. She further testified that she was a milliner by trade and had conducted her business very successfully for twelve or fourteen years before her marriage with her present husband, who was a retired business man, and that they both were very comfortably situated financially, which facts were well known to Mrs. West.

There was evidence introduced by the respondents that Mrs. West had on one or more occasions previous to her last sickness said that Lizzie, meaning Mrs. Hayes, did not need any of her, Mrs. West's, property, as she was well off, and that she, Mrs. West, did not like the way Mrs. Hayes had treated her father about the property which he had put into Mrs. Hayes's hands in not returning it to him when he wanted it.

Mrs. Hayes testified that within half an hour after her arrival in Southbridge, on June 14, Mrs. West said to her, " I don't know how this," meaning her sickness, " may turn with me. I have sent for you to have you fix up my business. I haven't done anything about making a will." To which Mrs. Hayes replied, " All right, I am ready at any time to assist you." The second conversation they had with reference to the matter was three or four days afterwards, when Mrs. West said to her, " I can't quite decide. I have thought I would give something to the dumb animal society and I have also thought of giving some to an old ladies' home. What would you do if it was you ? " To which Mrs. Hayes testified that she replied : " If I was situated as you are, with no children and no husband, I should divide it up equally between my nieces and nephews that I thought the most of." To which she testified Mrs. West replied, " That is just what I don't want to do; I don't want to have the property sold." Their third conversation regarding the matter occurred on June 27, the day before the alleged will was signed. Mrs. Hayes testified that Mrs. West then said, " Well, time is flying and I must do something and straighten out this business. I must decide how to do it. I don't know how to do it. I would like to give this property to some one who would keep it. I don't want to have it sold "; that she, Mrs. Hayes, waited a few minutes and then said to Mrs. West, " Well, Aunt, if you wish me to have this, I will keep it just as it is and rent it." About an hour afterwards, Mrs. West said, " I am in favor of giving this

property to you." To which Mrs. Hayes testified she replied, " All right, I am ready at any time to fix it up as you wish." Mrs. West then said, " Well, I would like to have you go and get Uncle Henry's will," that is, the will of her husband. Mrs. Hayes testified that when she found the will and read it to Mrs. West, the latter said, " I would like to have you make a will just like that, with the exception, I would like to have you mention to each of the nieces and nephews a dollar."

Mrs. Hayes testified that she had known for some time that her aunt had some funds on deposit, but the exact amount she did not know, and that she had other personal property and effects besides the real estate, and she also testified that she understood her aunt to mean only the real estate when she used the words " this property," in speaking of what she intended to give her. Mrs. Hayes further testified that she went directly into an adjoining room and drafted a will for Mrs. West, making it an exact copy of her uncle Henry's, Henry D. West's, will, except as to the names and the bequest of a dollar to each of the nephews and nieces, as above mentioned, as requested by her aunt. She testified that she then took it and read it to her aunt, who said, " Now, I would like to have it taken to Mr. Hyde and if it is all right, I would like to have it typewritten."

Mrs. Hayes further testified that at none of these interviews with her aunt with reference to the will or the disposition of her property was any other person present, that although she knew that her aunt was at first inclined to give some of her property to the dumb animal society or the old ladies' home, and did not wish to have the real estate sold, she, Mrs. Hayes, never suggested to her aunt the propriety or advisability of having any independent or disinterested advice as to how her aunt's desires in these respects might be carried out, and she testified that the reason why she had drawn a will in her own favor, including all of Mrs. West's property, both real and personal, when Mrs. West had simply meant to give her this property, meaning real estate, was because her uncle's will, which she said Mrs. West wanted her to copy, as above stated, expressed it that way.

It further appeared that on the following morning, June 28, Mrs. Hayes took the draft of Mrs. West's will, which she herself had written, to the office of Mr. Hyde, who was not a lawyer

but in the real estate and probate business, and she testified that she told Mr. Hyde that Mrs. West desired to make her will and handed him the draft she had made, telling him, if it was lawful and right, to draw it that way. · Upon this point Mr. Hyde, who was called as a witness for, the petitioner, testified that what Mrs. Hayes said to him was, that her aunt, Mrs. West, desired him to write the will for her and that she, Mrs. Hayes, gave him a written memorandum, indicating what' was desired for this will. He further testified that the draft which Mrs. Hayes presented to him was in form and effect a will unexecuted, excepting the *in testimonium* clause, which he thought was omitted, and that the wording of the will written out by him which Mrs. West signed was identical with the draft presented to him by Mrs. Hayes, excepting the clause beginning " in making the foregoing disposal of my estate, I am not forgetting," etc., which he substituted in place of the bequest to the various heirs by name and that he added an *in testimonium* clause. He further testified that in all other respects, so far as he could recall, there was no difference in the wording of the two. Mrs. Hayes testified that Mr. Hyde returned to her the draft she gave him and that she subsequently. destroyed it.

There was much other evidence on both sides.

At the close of the evidence the respondents made twenty-seven requests for rulings. Thirteen of these requests were granted by the judge, and the rulings requested were given by him as instructions to the jury. Nine other of the requests are held by this court to have been refused properly because they either assumed the truth of facts which were in dispute or attempted to put arguments for the respondents into the mouth of the judge, or did both of these things. ·

The other requests for rulings which were refused by the judge were as follows:

" 11. A will which is different from the previously expressed purpose of the testatrix and which is different from what it would have been if she had been in full possession of her faculties and had acted under independent advice, should be set aside.

" 12. The question of undue influence and mental incapacity cannot be separated where the testatrix was of advanced age and suffering from a disease affecting her brain and vital powers."

"18. If it is shown that at the time of the execution of the will the testatrix' mind was enfeebled by age and disease, even though not to the extent producing mental unsoundness, and the testatrix acted without independent and disinterested advice, and in the presence of the beneficiary under her will, and such gift was of the whole or a large portion of the testatrix' estate, and operated wholly or substantially to deprive those having a natural claim upon her bounty of all benefit in her estate, these circumstances authorize the jury to find the will void through undue influence without proof of specific acts and conduct on the part of the party charged with exerting undue influence."

"21. The fact that all the evidence of Mrs. West's statements and acts regarding the making of a will and the disposition of her property comes from Mrs. Hayes, who is the sole beneficiary under the alleged will, renders her testimony open to the closest scrutiny and gravest doubt, and unless the provisions of the will can be otherwise satisfactorily explained, it cannot be allowed to stand."

"26. The fact that Mrs. Hayes stood in a relation of trust and confidence to Mrs. West, who asked her advice, which Mrs. Hayes gave to her own advantage and to the injury of all other relatives would warrant the jury in disallowing the will."

The jury sustained the will, answering the first and second issues in the affirmative and the third issue in the negative ; and the respondents alleged exceptions to the refusals of the judge to make the rulings requested by them.

The case was submitted on briefs.

*J. H. Colby, E. A. Bayley & J. M. Cochran,* for the respondents.

*A. S. Hayes,* for the petitioner.

SHELDON, J.　The questions argued in this case arise upon the refusal of the judge to give certain instructions that were specifically asked for by the respondents. There was doubtless a great body of evidence which called for serious consideration by the jury upon the question whether Mrs. West's will was procured through the fraud or undue influence of Mrs. Hayes, the only beneficiary thereof; but if this question was answered wrongly by the verdict, the respondents' only redress is by application to the judge for a new trial for that reason. *Aiken* v.

*Holyoke Street Railway*, 180 Mass. 8. As was said by Montgomery, J., in *Asbury* v. *Charlotte Electric Railway & Power Co.* 125 N. C. 568, 573, we cannot criticise the verdict of the jury.

The eleventh request could not have been given in the form asked for. The fact that a will differs from the previously expressed purpose of the testatrix, or from what it would have been if, besides being in full possesssion of her faculties, she had acted under independent advice, does not require it to be set aside. She had the right to change her mind and to select her own advisers. And the jury were sufficiently told that the will could not be sustained unless the petitioner proved that the testatrix was of sound and disposing mind and memory.

The fourteenth, seventeenth, nineteenth, twentieth, twenty-second, twenty-third, twenty-fourth, twenty-fifth and twenty-seventh requests are all objectionable, and the judge was not required to give them. Some of them assumed the truth of facts which were in dispute; most of them were attempts to put arguments for the respondents' contentions into the mouth of the judge, by calling upon him to charge so as to emphasize certain portions of the evidence. All of them were obnoxious to one or both of these objections. Both fraud and undue influence were sufficiently defined and explained in what was said to the jury.

All the contentions of the respondents mentioned in the eighteenth request were sufficiently explained to the jury; and it was made plain to them that they might infer the existence of undue influence from the facts mentioned in this request, if they found these facts to be proved and chose to draw such an inference. This was as far as it was the duty of the judge to go. *Woodbury* v. *Woodbury*, 141 Mass. 329. *Banfield* v. *Whipple*, 14 Allen, 13, 14.

It would not have helped the jury to state to them the abstract proposition of law contained in the twelfth request. It is true of course, as argued by the respondents, that a person may have sufficient capacity to make a will if let alone and yet not be of sufficient capacity to resist the pressure upon him of strong influence; and the question whether the use of such influence is lawful or not often may depend, and perhaps in this case did depend, upon the condition of mind and body of the person upon whom it is exercised. *Dexter* v. *Codman*, 148 Mass. 421, 424.

*Bacon* v. *Bacon*, 181 Mass. 18, 22.  But that is not what the judge was asked to say to the jury.  He had a right to refuse this request.

As to the twenty-first request, it is enough to say that a judge has not the right to tell a jury that the testimony of a witness is open to the gravest doubt.  R. L. c. 173, § 80.  *Commonwealth* v. *Barry*, 9 Allen, 276, 278.

Nor ought the twenty-sixth request to have been given in terms.  It was a question for the jury to determine whether and how far there was a relation of trust and confidence between Mrs. Hayes and the testatrix.  If the jury found this fact to be as contended by the respondents, it would be a material circumstance for them to consider, and they would be warranted in saying that the will should not be sustained without proof to their entire satisfaction that it did express the real intentions of the deceased.  *Jones* v. *Simpson*, 171 Mass. 474, 477.  *Davenport* v. *Johnson*, 182 Mass. 269.  But this is a very different proposition from that which was asked for by the respondents.

No exception was taken to any of the instructions given ; but only the refusal to give the instructions which have been mentioned was excepted to.  If the respondents feared that the language used by the judge might be taken in a broader sense than they deemed consistent with the law, they should have called his attention to the matter.  *McKee* v. *Tourtellotte*, 167 Mass. 69, 72.

*Exceptions overruled.*