OTIS E. DUNHAM & another, executors, *vs.* CARRIE A. HOLMES.

Hampshire.    September 19, 1916. — October 13, 1916.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Will,* Validity. *Undue Influence. Evidence,* Competency. *Practice, Civil,* Rulings and instructions, Conduct of trial.

At the trial in the Superior Court of the issues, whether an alleged testator at the time of the execution of the instrument offered for probate as his will was of sound and disposing mind and memory and whether the alleged will was "procured to be executed by the fraud or undue influence" of a certain person, who was the principal beneficiary, where throughout the trial it was undisputed that the testator intended that this person should be the principal devisee and legatee under his will, and where the jury with the will before them must have understood this plainly from the language used in the will and from the instructions of the presiding judge, the judge properly may refuse to construe a certain

---

clause in the will in connection with certain other clauses by declaring what the legal rights of the legatees, devisees and trustees named would be if the will were admitted to probate, the respective rights of the different persons claiming under the will not being in issue.

At the trial of the issues named above the presiding judge gave the following instructions: "To have a sound mind in the matter of making a will, it is not necessary that a person have sufficient capacity for the transaction of ordinary business, or be accustomed to attend to ordinary business. It is, rather, a testamentary capacity that is required, namely, his mind must be sound with respect to whatever is involved in the making of his will; that is to say, he must have been able to understand and carry in mind, in a general way, the nature and situation of his property, his relations to persons who are about him and to those who would naturally have some claim on his remembrance, and to those in whom and those things in which he has been mostly interested. . . . the important question . . . is, Did the testator have the mental capacity to understand the nature and importance of the transaction in which he was engaged when he made this will?" *Held*, that these instructions were correct.

Where a testator has executed a will which was prepared by counsel acting under full instructions from him and was read to him before he signed it, it is to be assumed, unless the contrary is shown, that the testator understood the effect of the will as a whole, and it is not necessary to the validity of the will that the testator should have understood the technical effect of legal terms or should have anticipated the construction that would be adopted if the will should come before the courts on a bill for instructions or in a suit by a legatee against the executor.

At the trial of the issue, whether an alleged testator was of sound and disposing mind and memory, it is right for the presiding judge to refuse to instruct the jury that, if the alleged testator was a believer in spiritualism, his belief was an insane delusion or an erroneous opinion amounting to an insane delusion or constituted insanity or unsoundness of mind upon a single subject sufficient to invalidate the will.

At the trial of an issue as to the soundness of mind of an alleged testator, it is proper for the presiding judge to instruct the jury, that, if they find that the alleged testator "was a believer in spiritualism and that this belief influenced his life," causing him to separate from his wife and daughter and "prevented his daughter from seeing him, those are circumstances which you may consider on the question of the unsoundness of mind" of the alleged testator.

Where at the trial of an issue, whether the execution of an alleged will was procured by the fraud or undue influence of a certain woman who was the principal beneficiary under the alleged will, there is evidence that for many years until the death of the alleged testator the woman, who was a spiritualistic medium, had been in charge of his household, consisting at first of himself and the sons of a brother and afterwards of the medium and himself, the question, whether through their common belief in spiritualism or by reason of the conditions attaching to their personal relations the woman so influenced and controlled the alleged testator that he lived apart from his wife and daughter and made the alleged will giving to the woman a large part of his property, is for the jury under suitable instructions.

At the trial of the issue, whether the execution of an alleged will was procured by the fraud or undue influence of a certain woman, if the contestant of the will wishes to have the jury determine whether a part of the will "was procured to be

executed" through such fraud or undue influence, he should move to have the issue so recast and enlarged as to include that inquiry, and, in the absence of such a motion and such a reframing of the issue, it is right for the presiding judge to refuse to instruct the jury that, "if from all the evidence you find that [the woman in question] by fraud or undue influence procured, or partly procured, the execution of this will, it cannot be sustained."

At a trial of issues of fact a presiding judge should refuse to make a ruling or give an instruction which assumes the truth of facts in dispute.

At the trial of the issues above described the judge appeared not to have limited the period of time to which the evidence should be confined, and the parties introduced evidence of the acts of the alleged testator and of his relations to his wife and daughter and to the person charged with the exercise of undue influence during a period of approximately thirty-four years. A copy of a letter written by him to his daughter with his comments thereon in writing and a typewritten copy of another letter to his daughter, of which the original was not produced upon notice, were *held* to have been admissible, not only on the issue of the mental capacity of the alleged testator, but also on the issue of undue influence as showing the alleged testator's state of mind or feeling toward his daughter, besides being admissible as tending to contradict the witnesses for the contestant.

In the same case it was *held*, that the admission by the judge of certain evidence, which apparently was so immaterial and colorless as to have been harmless, was within the judge's discretionary power, which was not shown to have been exercised arbitrarily or prejudicially.

BRALEY, J. The testator left a widow who has waived the provisions of the will in her favor, and as his only heir at law a married daughter, who is the appellant and contestant. The jury having returned a verdict, that the will was duly executed, that at the time of execution the testator was of sound and disposing mind and memory, and that the will was not "procured to be executed by the fraud or undue influence of Helen B. Lochlan," a legatee, the appellant brings the case here on exceptions to the refusal of the presiding judge * to rule as requested, and to the admission of evidence.

The parties took eight days in the introduction of evidence, which is voluminous and conflicting on the second and third issues, while no controversy arises over the finding on the first issue. The burden is on the appellant to show reversible error, and, although the judge declined to give the rulings requested, yet, if in so far as they were correct in law and applicable to the issues they were covered by the instructions, his refusal furnishes no ground for complaint. *Cunningham* v. *Davis*, 175 Mass. 213. *Hopkins* v. *O'Leary*, 176 Mass. 258. *Graham* v. *Middleby*, 185

---

* *Keating*, J., before whom the issues were tried in the Superior Court.

Mass. 349. *Zamore* v. *Boston Elevated Railway,* 198 Mass. 594. *Cohasset* v. *Moors,* 204 Mass. 173.

The judge when dealing with the issue of testamentary capacity was not required to construe the seventh clause of the will in connection with the ninth clause and the residuary or fifteenth clause creating a trust, by defining as set forth in the first and second requests the legal rights of the legatees, devisees and trustees as if the will had been admitted to probate. It was undisputed throughout the trial, and the jury with the will before them must have understood from the instructions and the language used by the testator, that he intended Helen B. Lochlan should be the principal devisee and legatee in the enjoyment of his estate. The question for the jury was whether the testator was competent to make a will, and, until this question had been settled by sustaining the instrument, the rights of the parties claiming under it were not in issue. The instructions when read as a whole, after appropriately alluding to the presumption of sanity, clearly stated, that, with the burden of proof on the executors, the jury must be satisfied that the testator had sufficient "mental capacity to understand the nature and importance of the business in which he was engaged when he was making his will," and that "To have a sound mind in the matter of making a will, it is not necessary that a person have sufficient capacity for the transaction of ordinary business, or be accustomed to attend to ordinary business. It is, rather, a testamentary capacity that is required, namely, his mind must be sound with respect to whatever is involved in the making of his will; that is to say, he must have been able to understand and carry in mind, in a general way, the nature and situation of his property, his relations to persons who are about him and to those who would naturally have some claim on his remembrance, and to those in whom and those things in which he has been mostly interested. . . . the important question . . . is, Did the testator have the mental capacity to understand the nature and importance of the transaction in which he was engaged when he made this will?" And after stating and explaining the respective contentions of the parties, these instructions were in substance repeated during the charge.

It was, of course, essential to show that the testator knew the provisions of the will whereby he disposed of his estate. The

jury could find on plenary evidence, that the instrument was prepared by counsel acting under full instructions from the testator to whom it was read before execution. It is, moreover, to be presumed from its execution that he knew the contents, unless affirmative evidence to the contrary was introduced by the appellant. *Worthington* v. *Klemm*, 144 Mass. 167. *Doherty* v. *O'Callaghan*, 157 Mass. 90, 93. *O'Connell* v. *Dow*, 182 Mass. 541, 552. *Phillips* v. *Chase*, 201 Mass. 444, 449. *Perera* v. *Perera*, [1901] A. C. 354. It would follow that he understood the effect of the will as a whole, and it was unnecessary that he should grasp the meaning of technical legal terms, or endeavor to anticipate what legal construction would be adopted if the will came before the courts on a bill for instructions or in suits against the executors by legatees.

The seventeenth request has been waived, and the third, fifth and seventh requests are sufficiently covered by the instructions to which no exceptions were taken. *Whitney* v. *Twombly*, 136 Mass. 145, 147, 148. *Bacon* v. *Bacon*, 181 Mass. 18. *Clifford* v. *Taylor*, 204 Mass. 358, 361.

It does not seem to have been seriously disputed that the testator was an investigator of, or a believer in, spiritualism, and the sixth, eighth, ninth, thirteenth and fourteenth requests in substance asked the judge to instruct the jury, that, if they so found, his belief was an insane delusion or an erroneous opinion amounting to an insane delusion or constituted insanity or unsoundness of mind upon a single subject sufficient to invalidate the will. These requests were rightly denied. It could not have been ruled as matter of law that a belief in spiritualism was of itself an insane delusion, or such conclusive evidence of mental aberration as to destroy testamentary capacity. *Woodbury* v. *Obear*, 7 Gray, 467, 470. *Owen* v. *Crumbaugh*, 228 Ill. 380, 400; *S. C.* 10 Ann. Cas. 606, 607, 617, note, and cases there collected.

The question of testamentary capacity was to be determined by the legal standard already defined and not by his religious or theological opinions, even if they may have differed from the ordinary opinions or habits of metaphysical and religious thought of other members of the community. The weight to be given the evidence touching his belief in spiritualism and the effect, if any,

of such belief in the disposition of his property were for the jury. *Woodbury* v. *Obear,* 7 Gray, 467, 470, 471. *Dunham's appeal,* 27 Conn. 192, 202. *Middleditch* v. *Williams,* 18 Stew. 726. *Robinson* v. *Adams,* 62 Maine, 369. *Brown* v. *Ward,* 53 Md. 376. *In re Randall,* 99 Maine, 396, 398. And they were sufficiently instructed, that if they found that the testator "was a believer in spiritualism and that this belief influenced his life," causing him to separate from his wife and daughter and "prevented his daughter from seeing him, those are circumstances which you may consider on the question of the unsoundness of mind" of the testator. The testator many years before his death, although he provided for her support, lived apart from his wife for whom as well as for his daughter before and after her marriage, he entertained feelings of distrust, because of their alleged deception and hostile conduct. It is unnecessary to rehearse their differences or to comment on the causes leading to the separation and partial estrangement. The family history was detailed at great length to the jury, who were at liberty to find that his attitude toward each was not so unreasonable, irrational and unjustifiable as to indicate impairment of mind, and that his statement in writing found after death among his papers showing payments to his wife "from Sept. 1, 1881 to Sept. 1, 1900, more than one half of the estimated value of my estate as it stands today," was true. *Dew* v. *Clark,* 3 Add. Eccl. 79.

While the jury would have been warranted in finding that during many years and until his death Helen B. Lochlan, a spiritualistic medium, had been in charge of his household, consisting at first of himself and the sons of his brother, but afterwards only of his housekeeper and himself, the question, whether through their common belief, or by reason of the conditions attaching to their personal relations, she so influenced and controlled the testator that he lived apart from his wife and daughter and through her ascendancy over him procured the making of the will giving her a large portion of his property, which disposition the testator would not have made if such influence had not been exerted, also was for the jury under suitable instructions. *Emery* v. *Emery,* 222 Mass. 439. The appellant's fourth, tenth, twelfth and sixteenth requests were directed to this issue.

The tenth request, that the jury should be instructed that,

if "from all the evidence you find that Helen B. Lochlan by fraud or undue influence procured, or partly procured, the execution of this will, it cannot be sustained," could not have been given. The third issue transmitted from this court to the trial court was framed to present only the question whether the whole will had been procured by undue influence. If the appellant wished to have the jury determine whether if the will in its entirety had not been thus procured, and part of the will was "procured to be executed" through undue influence as assumed in the request, she should have moved in this court to have the issue so recast and enlarged as to include the inquiry. R. L. c. 156, § 5; c. 162, § 25. St. 1905, c. 263, § 1. *Old Colony Trust Co.* v. *Bailey,* 202 Mass. 283, 288.

The thirteenth request was refused properly. It assumed the truth of facts in dispute. *Hayes* v. *Moulton,* 194 Mass. 157. And the remaining requests, while not given in exact terms, were stated in the instructions in which fraud and undue influence were defined and their application to the evidence and the circumstances of the case sufficiently explained. If the jury found the facts to be as assumed or referred to in the requests, they were told they could find that undue influence had been exerted, and beyond this the judge was not required to go. *Maxwell* v. *Massachusetts Title Ins. Co.* 206 Mass. 197. *Emery* v. *Emery,* 222 Mass. 439, 441, 442. *Hayes* v. *Moulton,* 194 Mass. 157. It furthermore may be said generally, that correct statements of the rules of law applicable to the aspect of the evidence on which the appellant relied were given. If, because of apprehension that the jury might fail to understand their full application, further amplification or explanation was desired, counsel for the appellant should have pointed out the necessity and asked for further and more specific instructions. *Cooney* v. *Commonwealth Avenue Street Railway,* 196 Mass. 11. *Baldwin* v. *American Writing Paper Co.* 196 Mass. 402. *Wright* v. *Wright,* 139 Mass. 177.

We pass to the remaining exceptions. The judge is not shown to have limited the time within which the evidence should be confined, and the parties accordingly offered proof of the acts of the testator and of his relations to his wife and daughter and to Miss Lochlan ranging over a period of approximately thirty-four years. The copy of the letter written by him to his daughter, with

his comments thereon in writing, and the typewritten copy of another letter to her, the original not having been produced on notice, were admissible, not only on the issue of mental capacity to which it was limited by the judge, but on the issue of undue influence as showing the testator's state of mind or feelings concerning her. *Woodward* v. *Sullivan,* 152 Mass. 470. *McConnell* v. *Wildes,* 153 Mass. 487, 489, 490. *Hall* v. *Reinherz,* 192 Mass. 52. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352. R. L. c. 175, § 66. The statements and letters also tended to contradict the evidence of the appellant. *Randall* v. *Claflin,* 194 Mass. 560.

The evidence introduced by the executors, that chairs, rugs and other household articles were arranged by one Bartlett as directed by Miss Lochlan because of the testator's insistence that such arrangements should be made, would seem to be so immaterial and colorless as to have been harmless. Its admissibility, however, was within the discretion of the judge, which is not shown to have been arbitrarily or prejudicially exercised. *Aldrich* v. *Aldrich,* 215 Mass. 164, 168.

We have considered all the exceptions which have been argued, and, finding no material error of law, they should be overruled.

*So ordered.*

*F. M. Forbush,* (*E. L. Shaw* with him,) for the appellant.
*O. E. Dunham & J. H. Schoonmaker,* executors, *pro se.*