CHARLES WHITNEY, executor, vs. SOPHIA G. TWOMBLY & others.

Middlesex. November 21. — 22, 1883. C. ALLEN & HOLMES, JJ., absent.

The highest degree of mental soundness is not required in order to constitute capacity to make a testamentary disposition of property.

If, from any cause, the mind or memory of a person is so much impaired as to render him incompetent to manage his ordinary affairs, he is not necessarily incapacitated from making a testamentary disposition of property.

At the trial of an appeal from a decree allowing a will, the judge instructed the jury, in substance, that the testatrix must have been capable of understanding and carrying in her mind, in a general way, the nature and situation of her property, her relations to those persons who would naturally have some claim to her remembrance, and the persons in whom and the things in which she had been mostly interested, and the nature of the act she was doing, and free from any delusion which was the effect of disease, and which would lead her to dispose of her property otherwise than she would have done if she had known and understood correctly what she was doing; that all the testimony covering the whole later portion of her life, as to her relations and degree of intimacy with her relatives, as to her peculiarities, her disposition and temperament, her griefs and bereavements, her attacks of sickness, her habits and manners, her ability and inability to act, was to be considered in determining her condition of mind at the date of the will; and that neither age nor disease was, of itself, a disqualification, but it excited vigilance and caution to see if it was accompanied with mental incapacity. *Held,* that the appellant had no ground of exception.

APPEAL from a decree of the Probate Court, allowing a certain instrument as the last will and testament of Abigail D. Place. The case was tried in this court, before *C. Allen,* J., upon the following issues: 1st. Whether the alleged will was duly executed. 2d. Whether Abigail D. Place, at the time of the execution of the alleged will, was of sound and disposing mind and memory. 3d. Whether she was unduly influenced to make the alleged will. The judge allowed a bill of exceptions, in substance as follows:

The will offered for probate was dated January 2, 1877, when said Abigail was nearly sixty-three years of age. She died in 1882.

Upon the question of the testamentary capacity of said Abigail, certain testimony was introduced by the appellants tending to show eccentric conduct at times on her part, great despondency from severe domestic affliction, and two shocks of paralysis;

one of which, a comparatively slight shock, was in January, 1876, and the other in June, 1878.

There was evidence tending to show that, for several years before she executed the instrument purporting to be her last will and testament, and up to the time of her death, her pecuniary affairs, such as the collection of dividends, &c., were managed by other persons. There was conflicting evidence as to the extent to which she managed her household affairs, or transacted other business herself, during the period above stated; but there was evidence tending to show that from the time of her husband's death, in 1872, down to the second attack of paralysis, she kept house, hired and paid her own servants, purchased her groceries, provisions, &c. herself, and generally managed her household affairs.

There was evidence on the one side and on the other tending to show interviews, conversations about her business and property, friends and relations, with various persons at various times, and her conduct, frequent visits, interviews, and conversations with her brothers, sisters, nephews and nieces, and other persons; her disposition, temperament, griefs and bereavements in the death of her father, mother, child, and husband; her manner of living and associating with neighbors, relatives, and friends, down to the time of the making of the alleged will, and also her conduct, intelligence, and understanding when the will was made, and for a considerable time thereafter.

There was also evidence tending to show that all the provisions of the alleged will were dictated by her without suggestions from any one, and that legacies were given to all her relatives.

The appellants requested the judge to instruct the jury as follows: "1. The highest degree of mental soundness is required in order to constitute capacity to make a testamentary disposition of property. 2. If from grief, disease, melancholy, paralysis, old age, or any other cause, the memory or mind of the testatrix was so much impaired as to render her incompetent for the management of her ordinary affairs, then she was not of sound and disposing mind and memory."

The judge refused to rule as requested, but instructed the jury as follows, as to what constitutes soundness of mind: "Soundness of mind, such as will enable a person, under the

statute, to make a will, has relation to the business to be transacted, namely, the disposition of her property by will. Her mind must have been sound with reference to whatever is involved in this transaction; that is to say, she must have been able to understand, and carry in her mind, in a general way, the nature and situation of her property, and her relations to those persons who are about her; to those who would naturally have some claim to her remembrance; to those persons in whom, and those things in which, she has been mostly interested. She must have been capable of understanding these things, and the nature of the act she was doing, and the relation in which she stood to the objects of her bounty, and to those who ought to be in her mind on such an occasion, and free from any delusion which was the effect of disease, and which would or might lead her to dispose of her property otherwise than she would have done if she had known and understood correctly what she was doing. All the testimony, covering the whole later portion of her life, — as to her relations and degree of intimacy with her brothers and sisters and nephews and nieces; as to what she said and what she did; as to her peculiarities, if you find that she had any; as to her disposition and temperament, her griefs and bereavements, her attacks of sickness, whatever you may find them to have been, her habits and manners; as to what you may find that she was not able to do, and what she was able to do, — may be considered so far as they will aid you in determining her condition of mind on January 2, 1877. Age is not of itself a disqualification, but it excites vigilance to see if it is accompanied with incapacity. Disease is not itself a disqualification, but all infirmities awaken caution to see if mental capacity is impaired or gone."

There were other instructions as to particular causes or phases of unsoundness of mind, and as to partial insanity, and as to undue influence, not excepted to, and not material to be stated here.

The verdict was in favor of the will on all the issues; and the appellants alleged exceptions to the refusals to rule as requested, and to the instructions given.

*G. Stevens & F. T. Greenhalge,* for the appellants. 1. The first request for instructions refused is in the exact language of

the court in a late English case, and should have been given. *Boughton* v. *Knight*, L. R. 3 P. & D. 64; 42 L. J. (N. S.) Prob. 25; 28 L. T. (N. S.) 562.   Here " mental soundness " does not imply mental strength or power; it describes the quality of the mind, and distinguishes the sane from the insane mind.   It is not used like the expression " sound judgment," where difference of degree among men of judgment is intended.   A sound and disposing mind means a mind of natural capacity, not unduly impaired by old age, or enfeebled by illness, or tainted by morbid influence.   *Smith* v. *Tebbitt*, 36 L. J. (N. S.) Prob. 97; 16 W. R. 18.

2. The second instruction requested should have been given. The instructions given do not cover the points contained in this request.  *May* v. *Bradlee*, 127 Mass. 414, 419.   1 Jarm. Wills (5th Am. ed. by Bigelow) 38.   If the testatrix was incompetent to manage her ordinary affairs by reason of grief, disease, &c., the sort of incapacity so produced is a continuing and universal incapacity, and would inevitably affect the testatrix in every transaction of life, whether ordinary or extraordinary.

*D. S. Richardson & G. F. Richardson*, (*W. B. Durant* with them,) for the appellee.

BY THE COURT.   The rulings requested by the appellants were rightly refused, and the instructions given to the jury were accurate and sufficient.            *Exceptions overruled.*