*Exceptions overruled.*

SAMUEL W. EMERY & others *vs.* MARY E. B. EMERY, executrix.

Suffolk.   November 18, 19, 1915 — January 14, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Will,* Validity.   *Undue Influence.   Husband and Wife.*

At the trial in the Superior Court of the single issue, whether the execution of an instrument propounded for probate was procured to be made through the fraud or undue influence of the wife of the testator who survived him as his widow and to whom and her two sisters he bequeathed the bulk of his property to the exclusion of his children by a former marriage, there was no direct evidence that the widow ever induced or sought to induce her husband to make any testamentary disposition of his property. It appeared that, when his first wife obtained a divorce from him a passionate affection existed between him and the woman who became his second wife and his widow, that after their marriage this affection became so preponderant as to lead him to act in conformity with his wife's feelings and desires in all family matters, that after three years of married life and a year before the execution of his will he told his eldest son that he could not give him money for a college education because it would make trouble with his wife, that two years after the date of the will he gave this son money for this purpose but on the express condition that he should not let any one know it "because the minute that my wife finds this out it will be all over," and that afterwards he told his son that his wife had found out about it and that the son must return the money, which he did. There was other evidence which with that described would have warranted the jury in finding that the alleged testator acted in complete subordination to his wife's purpose that no part of his property ever should be enjoyed by his children. *Held,* that a finding of the jury that the execution of the instrument was procured through the undue influence of the wife was warranted.

APPEAL from a decree of the Probate Court for the county of Suffolk allowing a certain instrument dated September 7, 1897, as the last will of Samuel W. Emery, late of Boston.

On appeal to the Supreme Judicial Court the case was sent to the Superior Court for the trial of the single issue, "Was the execution of the instrument propounded for probate procured to be made through the fraud or undue influence of Mary E. B. Emery?"

The issue was tried before *White*, J. The evidence is described in the opinion. At the close of the evidence the appellee asked the judge to make, among others, the following rulings:

"1. Upon all the evidence the court must instruct the jury that the issue submitted to them must be answered in the negative.

"2. There is no evidence from which the jury can find that the instrument here in question was procured by the fraud or undue influence of Mary E. B. Emery, and the question submitted to them must be answered in the negative.

"3. [To show undue influence in the procurement of the execution of the will, it must be found as a fact that the person accused of undue influence must have consciously and intentionally exercised such influence with the wrongful purpose to compel the testator to subordinate his own intentions to hers.] There is no evidence of such influence in this case and the jury must be instructed to answer the issue submitted to them in the negative."

The judge refused to make the first and second rulings requested or to make the part of the third ruling contained in the last sentence of it. He gave as an instruction to the jury the part of the third ruling enclosed in brackets and also made four other rulings requested by the appellee.

The jury returned an affirmative answer to the question submitted to them; and the appellee alleged exceptions.

*H. Parker* (*H. H. Fuller* with him,) for the appellee.

*J. P. Richardson,* (*S. W. Emery* with him,) for the appellants.

BRALEY, J. The executrix and widow of the testator having offered the will for probate, the testator's children by a former marriage contested its allowance on the ground that the instrument had been procured to be made through fraud or undue influence of the widow, to whom and to her two sisters, one of whom had been adopted by him, he bequeathed the bulk of his property. The jury having decided in favor of the contestants,

the case is here on exceptions of the proponent to the refusal of the presiding judge to rule that as matter of law there was no evidence of fraud or undue influence, and that the question submitted must be answered in the negative.

We assume on the record, that apart from this request full and appropriate instructions were given, and there are no exceptions to the admission of evidence, which ranged approximately from four years before the date of the will to two years thereafter. The first marriage, the birth of the children, the divorce proceedings of the first wife, who has survived her former husband, the second marriage and the adoption were uncontroverted, and there was no direct evidence that the widow ever induced or sought to induce her husband to make any testamentary disposition of his property.

The nature of fraud or undue influence sufficient to vitiate a will has often been defined. *Whitcomb* v. *Whitcomb,* 205 Mass. 310, and cases cited. It may be produced by unceasing importunity or by the silent yet resistless power which a strong will exerts over a less forceful and resolute individuality. The boundary, where legitimate influence on the part of a wife to persuade her husband to make a testamentary disposition of his property in compliance with her wishes ends and illegitimate persuasion or coercion begins, cannot be ascertained with the accuracy of mathematical demonstration. *Hall* v. *Hall,* L. R. 1 P. & D. 481. While the fundamental law is certain, the facts vary with the circumstances of each case. It needs no discussion to make evident that where either spouse is charged with having overcome the volition or free agency of the other, the very relation of husband and wife, as well as the nature of the wrong, generally preclude the procuring of direct testimony, and resort to proof of circumstances which are admissible to establish the charge becomes necessary. *Woodbury* v. *Woodbury,* 141 Mass. 329, 331. *Hoffman* v. *Hoffman,* 192 Mass. 416. *Old Colony Trust Co.* v. *Bailey,* 202 Mass. 283. *Aldrich* v. *Aldrich,* 215 Mass. 164. The evidence, of course, must show that the testator disposed of his property differently than he would have done if he had been left free to exercise his own judgment. Or, in other words, the issue is, was such influence exerted and, if so, did the testator yield to it?

The question now recurs, Is there any substantial evidence warranting the verdict? The bare record cannot reproduce the environment of the trial. The appearance of the witnesses, their manner when giving evidence, the indefinable something constituting personality, were all before the jury but are absent from the printed page. They could have found that before the divorce the testator conceived a passionate fondness, which was reciprocated, for the woman who became his second wife, and that after marriage the affection and loyalty springing from the relation became so preponderant as to lead him to act in conformity with her feelings and desires in all matters appertaining to his former marital and parental affiliations. It was after three years of married life, and within a year before the execution of the will, that he said to his eldest son, who desired to obtain a college education and applied to his father for assistance: "I can't do anything to help you because it will simply make trouble for me with my wife there in the family. They will find fault and I just can't do it. It is impossible the way I am fixed; the situation I am in now." It further appeared from the son's evidence, which was admissible under the rule of *Shailer* v. *Bumstead*, 99 Mass. 112, that two years after the date of the will the testator sent for him and gave him money for this purpose, saying: "It is upon this express condition, that you will not under any circumstances say, that I am doing it for you or let any one know it, because the minute that my wife finds this out it will be all over. I shall have to stop it and I can do nothing further." The son, having received and partially expended the amount, again was sent for when the testator said, "that his wife had found it out . . . and it was all over. . . . I can't do another thing. . . . There is all kinds of trouble for me, and I can't do anything more, and I must have that money back, and this thing must be closed up." Upon being told how greatly his son relied upon him for aid and of the partial expenditure, the reply was: "I have tried to do my best, and tried to do this thing, but it has got to a point where I can't. You had better go right out and take the things back that you have got and get the money back and give it to me." The request or command was complied with and the money was returned. The foundation having been laid by evidence tending to establish a previous mental condition, this testimony showing

its continued existence would warrant the jury in finding, that when he prepared and executed the will the testator acted in complete subordination to his wife's purpose that no part of his property should ever be enjoyed by the children. The R. L. c. 135, § 1, conferred the right to dispose of his estate as he pleased even if his children were practically disinherited, and there are portions of the record which standing alone support the view ably urged by counsel for the will, that it expressed the uninfluenced determination and intention of the testator. But the jury were not restricted to single instances. The life and conduct of the husband and father within the period of inquiry had been fully portrayed, from which more than one inference properly could be drawn. It was for them to determine under suitable instructions whether the testator, "a strong man of good intellect and a good lawyer," having paid by way of alimony a large sum to his first wife and later by order of the court a further allowance for the support of his minor children, which together amounted to a very appreciable portion of his entire property, felt that they had no further just demands on his bounty in view of his subsequent obligations, or whether he succumbed to the over-persuasion or influence of his wife, and disregarded the ordinary feelings of parental affection and of solicitude for the future welfare of his children. It may be the conclusion they reached was erroneous in fact. We are not concerned however with the weight of evidence or the credibility of witnesses; that was for the judge to determine on a motion for a new trial. And, the verdict as matter of law not having been unwarranted, the exceptions should be overruled.

*So ordered.*