GEORGE N. SMITH *vs.* ETTA E. H. BREWSTER.

Norfolk.    November 19, 1923. — January 7, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Probate Court*, Jury issues.    *Will*, Validity.

In the record before this court upon an appeal from an interlocutory decree of the Probate Court denying a motion for the framing of jury issues, was a " statement of facts on motion for jury issues " signed by the judge and filed after a request by attorneys for the contestant for a report of material facts under G. L. c. 215, § 11.   There also was an " agreement," filed after the death of the judge and signed by the contestant and by one legatee under the will, but not by the petitioner for probate of the will, that " At the hearing on the motion for jury issues no evidence or statement of evidence in support of the will or in opposition to the motion was presented." *Held*, that it must be assumed that the statement filed by the judge was a summary of the evidence of witnesses who testified at the hearing before him.

At the hearing of a motion for jury issues, filed with regard to a petition for the proof of a will, as to whether the alleged testator was induced to make the will by undue influence of certain named persons and as to whether he executed the instrument with an understanding and purpose that it should be his last will and testament, evidence as to influence exerted upon the alleged testator by the persons named in the issue was *held* not to be sufficiently strong to require the sustaining of an appeal from a denial of the motion.

An order by a judge of probate denying a motion for a jury issue as to the soundness of mind of an alleged testator was reversed on appeal where it appeared that there was evidence before the judge tending to show that the alleged testator at the time of the signing of the instrument was a sick, decrepit old man, suffering from Bright's disease and hardening of the arteries and that he was somewhat feeble-minded, and that his attending physician testified to the fact that he considered the alleged testator to be a " moron," only " ten per cent normal " and thought " it somewhat doubtful if he was able to manage his business affairs."

PETITION, filed in the Probate Court for the county of Norfolk on January 10, 1921, for the proof of the will of Jeremiah Comeau, late of Wellesley, and the appointment of the petitioner as executor.

In the Probate Court, Etta E. H. Brewster appeared to contest the proof of the will and filed a motion, which as

afterwards amended, sought that issues be framed to be tried by a jury, as follows:

" 1. Did the said Jeremiah Comeau execute said instrument with the understanding and purpose that it should be his last will and testament?

" 2. Was the said Jeremiah Comeau at the time of the execution of the said alleged will and testament of sound mind?

" 3. Was the execution of said alleged will and testament of said Jeremiah Comeau, procured by the fraud or undue influence of Blanche Bennett, of said Wellesley, Daniel Moore, who is named in said will, and now believed to be in the State of Idaho, and Josephine Newton, also named in said will, and divers other persons, or any of them, exercised upon the said Jeremiah Comeau? "

The motion was heard by *Flint*, J., and was denied. The contestant requested a report under G. L. c. 215, § 11, and appealed.

Material facts stated in the report filed by the judge were as follows:

" Jeremiah Comeau was a sick, decrepit old man, wasted with disease, and had become somewhat feeble-minded as seen by a physician who had known him for years. Said will was not as he wanted it. Thought by it that Blanche (his housekeeper) was going to get all. There had been no material change in his condition for two or three months before his death. He had Bright's disease and hardening of the arteries. The same physician had made a will for him making himself the executor only two or three weeks before. He considered Jeremiah Comeau a moron, and had an idea it was all right to make a will for him, and that any one who could talk could make a will, if he desired to, even though he was not of testamentary capacity. The attorney and George M. Smith were present when the will was made. Blanche Bennett and a friend, Mr. Moore, from California, were present. The physician did not advise not to draw will. Moore was told to get out and finally went, although it was not then known that Moore was to benefit from the will. Physician said testator was only ten per cent normal. Dur-

ing the last forty years the testator had been slowly accumulating the property of which he died possessed, and during that time had lived mostly in one house. The doctor had urged him to make his first will not long before the one now contested. His relatives were only known as set forth by him to the attorney, there being eight in all. Testator mentioned the persons to receive specific legacies, but subsequently said it was not as he wanted it. Relatives had neglected him to some extent, and it seemed doubtful if he was able to manage his business affairs.

" Mr. Moore was one accused of exercising undue influence. The physician above mentioned, Dr. T. N. Gallagher, had seen him frequently. A witness living across the street said the testator spent most of his time in bed and when up had to be helped about. When tried to talk with him he complained of headache and motioned for witness not to talk. For a long time had only walked from the house to the barn by the roadway, and when in bed lay dormant most of the time. Used to be frequently heard groaning in the room in front of house. Had not recently been seen off his premises except with Blanche Bennett, his housekeeper, or when riding with her. It was claimed that she exercised undue influence over him. When urged to go to the Hot Springs she tried to influence him and told others to mind their own business. Mrs. Bennett was friendly to Moore in Comeau's presence, but not upon other occasions. From another witness it appeared that along toward the last he was failing rapidly. He said he was paying Blanche Bennett for her work and that he had some relatives to whom he did not wish to give anything. He claimed he had already given Mrs. Bennett some of his property. He said if property was worth having it was worth fighting over. Did not want his niece, Josephine, to have anything. Did not want Blanche Bennett to have so much and wished Mrs. Newell and Mr. Smith to have something, referring especially to land opposite Mr. Smith's nursery. Said Mrs. Bennett got it all; that he was left a poor, penniless man and was not satisfied. Said that things had not gone as he wanted them to, and that those about him had made up the will to suit

themselves. He thought Mosely who drew the will was an honest man, still did not feel satisfied with the will."

There was on file in the Probate Court an agreement, which was filed after the death of *Flint,* J., and was signed only by the attorney for the contestant Etta E. H. Brewster and the attorney for one Blanche Bennett, a legatee under the will but not one of the next of kin of the testator, that " At the hearing on the motion for jury issues no evidence or statement of evidence in support of the will or in opposition to the motion was presented."

The case was submitted on briefs.

*A. R. MacKusick, A. W. Hoe & G. F. Wenrich,* for the respondent.

*J. J. Corbishley,* for the legatee, Blanche Bennett.

BRALEY, J. This is an appeal from the denial of a motion by the contestant and appellant to frame issues for trial by jury, whether the testator was of sound mind when he made his will, and whether he executed the instrument with the understanding and purpose that it should be his last will and testament, and whether the will was procured to be made by the fraud or undue influence of Blanche Bennett, Daniel Moore, Josephine Newton, or either of them.

We assume on the record, notwithstanding the agreement of counsel to the contrary, filed after the death of the judge of probate, that the " statement of facts " found by him " on motion for jury issues," is a summary of the evidence of witnesses who testified at the hearing.

It was said in *Cook* v. *Mosher,* 243 Mass. 149, 152, 153, " It is the duty of this court to examine the evidence, to reach its own conclusion as to the facts, and to decide the case according to its own judgment, giving due weight to the finding of the judge. But a finding made by him after a hearing in which witnesses have testified orally before him will not be reversed unless plainly wrong." While proof of undue influence ordinarily must depend largely on circumstantial evidence, a careful examination of the testimony fails to show, that the denial by the judge of probate of that issue, as well as the issue whether the testator executed the instrument with an understanding and purpose that it should

be his last will and testament, can be held to have been plainly erroneous, even if the testator subsequent to the execution of the will said it " was not as he wanted it." *Connell* v. *Sokoll, ante,* 203. *Hoffman* v. *Hoffman,* 192 Mass. 416. *Emery.* v. *Emery,* 218 Mass. 227. *Barker* v. *Comins,* 110 Mass. 477, 488.

But on the issue of testamentary capacity the record tends to show that the testator was a sick, decrepit old man suffering from Bright's disease and hardening of the arteries, and that he was somewhat feeble-minded. The testimony of his attending physician was to the effect, that he considered the testator a " moron " only " ten per cent normal " and " it seemed doubtful if he was able to manage his business affairs." The evidence of another witness was " that along toward the last he was failing rapidly." It is plain there was substantial evidence for the consideration of a jury, whether his mental soundness was sufficient to enable him to make a will. *Whitney* v. *Twombly,* 136 Mass. 145, 146, 147.

The order denying the motion on the second issue is reversed, but as to the first and third issues it is affirmed, and the case is to stand for further proceedings in the court of probate not inconsistent with this opinion.

*Ordered accordingly.*