WINFIELD M. WILBAR, executor, *vs.* WILLIAM DIAMOND.

Plymouth.   May 19, 1924. — June 13, 1924.

Present: BRALEY, DECOURCY, PIERCE, & WAIT, JJ.

*Probate Court,* Jury issues, Appeal.

On an appeal from a decree of the Probate Court denying a motion by a son, who was contesting the proof of the will of his mother, for the framing of an issue for trial in the Superior Court as to whether or not the will was procured to be executed through fraud or undue influence of certain persons or of either of them, which motion was heard in the Probate Court upon statements of counsel as to facts expected to be proved, it was *held,* that, while the offer of proof presented facts which well might have induced the judge to grant the motion, nevertheless, in the light of the whole record, it could not be said as a matter of law that the order denying the motion should be set aside.

PETITION, filed in the Probate Court for the county of Plymouth on November 6, 1923, for proof of the will of Nellie E. McCloskey, late of Brockton.

The petition was opposed by William Diamond, son of the alleged testatrix, who moved that there be framed for trial in the Superior Court issues described in the opinion.

The motion was heard by *L. E. Chamberlain,* J.  The will contained ten paragraphs.  The first two paragraphs provided for the perpetual care of the burial lot of the testatrix and for the interment of her remains.  The third paragraph gave $10 to the respondent, the son of the testatrix, and contained the following: " I make no further provision for him or his heirs in this will for the reason that I have provided for him liberally out of my estate during my lifetime, and I feel that he has had all that is rightfully his, in view of the said advancements that I have made to him and his children."  The fourth, fifth and sixth paragraphs gave legacies of $100 each to three named persons, one of whom was Lillian Grady, referred to in the third issue sought.  The seventh and eighth paragraphs gave legacies to nine different charitable institutions, eight of which were given $100 each and the ninth $500.  By the ninth paragraph the residue of the estate was given to a cousin of the testatrix, Susan L. Megley, (referred to in the third issue sought) with the statement, " she being the only relative who has shown me any attention or affection in my declining years.  It is for the reason of the indifference of my other relatives that I make no provision for any of them in this will."  By the tenth paragraph, the petitioner was nominated as executor.

The counsel for the contestant offered to prove the following facts:

" William F. Diamond is the son and only heir at law of Nellie E. McCloskey, late of Brockton, who died October 30, 1923.  On July 16, 1923, she made a will, which will is now offered for probate, wherein she left her said son $10; and after a few charitable bequests, she gave all the rest and residue to Susie L. Megley, a cousin.  The amount Susie L. Megley would receive would be in the neighborhood of $10,000.

" William F. Diamond is about forty years old, born out of wedlock, and since his birth was brought up by strangers until about six years prior to death of testatrix.  About six years prior to her death she went to him at his home in Plymouth and induced him to come to Brockton with his wife and children and live with her.  About three years later,

she purchased a house for him in Brockton and paid about
$2,500 as payment on purchase price, the balance represented
by a mortgage still on the premises of about $3,000. He,
at her request, gave her a lease for life of the tenement on
third floor in said house without rent and he occupied the
first floor with his family. He was always attentive to his
mother, and considerate of her welfare. He did all the
chores and spent a great deal of time with his mother evenings
after work. For nearly three years these conditions con-
tinued, Mrs. McCloskey occupying the third floor tenement,
and the contestant with his wife and children, the first floor
tenement; living in this way harmoniously and on pleasant
and familiar terms, except on one occasion about two years
before she died they had a quarrel which was made up within
a short time. Beginning in June, 1923, Susie L. Megley
came to the house almost daily and spent the greater part
of the day with Mrs. McCloskey, and often stayed in the
evenings. After June, 1923, when the contestant went up to
his mother's tenement, he would find Mrs. Megley there,
taking charge; and she made him feel uncomfortable and that
his presence was not desired. He never had any quarrel
with his mother even after Mrs. Megley came. After that,
the chores would be all done when he got home; and food
that he would send up to his mother would be returned un-
touched. After Mrs. Megley had gone there to live his
mother seemed to act differently toward the contestant.
Up until the early part of June, 1923, she frequently spoke
of her property and always told him that all she had would
be his. She died of cancer and during 1923 was very feeble.

" Mrs. Katherine Lander's testimony will be that she
talked with deceased in February, 1922, and again in July,
1922, and Mrs. McCloskey told her that she was going to
leave all her property to Willie (meaning contestant) as he
was all she had and she wished to make it easier for him.
She said he was always kind to her. She visited testatrix
Labor Day, 1923, and she said ' Willie ' never came to see
her and did not do any errands or get any pills for her now.
Susie L. Megley told testatrix she mustn't talk and acted
very hostile toward her (Mrs. Landers). Mrs. Megley

said in the presence of testatrix that Willie and his wife never came up and that they wouldn't let the little girl come up to see the grandmother.

"Miss Gertrude Lander's testimony will be that in the early part of 1922 testatrix told her that she never had a chance to do anything for Willie, but now that she could she was going to see that he didn't want for anything, and when she died everything she had would be his. Nellie Simmons' testimony will be that she lived with Mrs. McCloskey several months just prior to July, 1923; that after Susie L. Megley came she noticed a change in attitude in Mrs. McCloskey and made her feel uncomfortable and she finally left the house because of it. Susie L. Megley seemed hostile toward her. From the moment Susie came into testatrix's presence, she seemed to have control over her. Testatrix always spoke well of Willie.

"Beatrice P. Davenport, the nurse, will testify that she nursed deceased from October 22, 1923, until her death; that Mrs. Megley engaged her and told her the son had not been attentive to his mother and cautioned her never to have anything to do with him. Susie L. Megley also told the nurse not to let anyone in the house without her instruction as she had full charge, and to take no favors from the son and to do her own errands or have her, Susie L. Megley, do them. That she never saw an instant when it didn't appear that the son had perfect devotion for his mother but the mother was too sick to make many demonstrations but always appeared to hold a friendly attitude towards him and always lighted up when he came into her presence. Whenever she (the nurse) praised the son in the mother's presence, Mrs. Megley would contradict and say to the contrary and seemed to take a jealous attitude against him. She seemed to have perfect reliance in what Mrs. Megley said. Mrs. Megley was always very unfriendly toward the son. That Mrs. Megley told her a will was made and also a paper signed, giving her everything in the house. She told her to keep secret about the papers being signed.

"Ellen Murphy will testify that the son was always dutiful to his mother and worked hard to do things for her. That

the day the will was made Susie L. Megley was there and was in the room with Mr. Wilbar and Mrs. McCloskey at or about the time the will was signed. That ' Lil Grady always spoke against the son to the mother and would say he doesn't act towards her as a son ought to and never would do anything for her, and that he was always using his mother mean.' ' This was all untrue.' That ' Lil Grady came every night and stayed until a late hour and most the whole evening she would be talking against Willie and his wife to his mother and in the presence of Susie L. Megley. She was always urging his mother against him. . . . After Mrs. McCloskey died, the son sent for the undertaker, W. G. McGlinchey. The undertaker said it would be impossible to take a casket down the stairs and the son told him to lay the body out downstairs in his tenement and hold the funeral from there, which was done. Mrs. Megley objected strenuously to this and attempted to stop it and even telephoned her attorney to find out if she had power to prevent it."

On the question of testamentary capacity all the contestant offered to prove was the fact that his mother had been failing for over a year and was in a very weak physical condition due to cancer trouble and medicine and drugs necessarily taken for said disease.

The motion was denied. The respondent appealed.

The case was submitted on briefs.

*H. F. Parker, O. V. Fortier, & S. B. McLeod,* for the respondent.

*J. J. Geogan,* for the petitioner.

PIERCE, J.   This is an appeal from an order of the Probate Court denying a motion of the contestant to frame issues for a jury trial on a petition for the allowance of the will of Nellie E. McCloskey. The issues which the contestant and appellant moved to have framed are (1) Was the instrument offered as the will of the testatrix duly executed? (2) Was the testatrix of sound and disposing mind and memory at the time of the execution of said will? and (3) Was the execution of said will procured through the fraud or undue influence of Susie L. Megley and Lillian Grady, or either of them? No evidence was heard and no stenographer was appointed

under G. L. c. 215, § 18, to report the statement of counsel
for the contestant as to the evidence within his knowledge
and control.    In lieu of evidence, counsel for the contestant
and for the petitioner, respectively, made extended state-
ments as to their expectation of evidence to be presented
at a trial, which, at the request of the contestant under G. L.
c. 215, § 11, are reported by the judge of probate as findings
of material facts.

Cases which are appealed to this court on decisions made
by probate judges on statements of counsel as to expected
evidence stand before this court precisely like cases on appeal
from a decree entered by a judge in equity with full report
of the evidence, oral or documentary.    *Cook* v. *Mosher*, 243
Mass. 149.    Those based merely on statements of counsel
as to expected proof have a closer resemblance to appeals in
equity where the evidence is documentary than they do to
the class of appeals where there is a report of evidence or a
finding of fact, *Fuller* v. *Sylvia*, 240 Mass. 49; with the im-
portant distinction that there is an element of discretion in
the action of the judge of probate respecting the framing of
issues for a jury, which is of weight and will be carefully
regarded when his decision is brought before this court on
appeal.    *Clark* v. *McNeil*, 246 Mass. 250, 255.    *Smith* v.
*Brewster*, 247 Mass. 395.    *Old Colony Trust Co.* v. *Pepper*,
248 Mass. 263.

It is plain the evidence which counsel stated they expected
to be able to produce at the trial on the suggested issues of
fact was insufficient to establish that the will was not duly
executed and that the testatrix was not of sound and dis-
posing mind or memory, in view of the finding by the judge
that, " The items for the will were given by testatrix to her
attorney and were not prompted by any third person.    Mrs.
Megley was not in the house when the will was executed.
The will was read to testatrix before signing, she expressed
satisfaction at its contents, declared it to be her. will, and
asked the witnesses to sign.    The testatrix was sixty-four
years old, intellectual and of full capacity."    The offer of
proof in support of the suggested issue, whether the will
was procured to be executed through the fraud or undue

influence of Susie L. Megley and Lillian Grady, or either of them, presents alleged facts which might well have induced the judge to frame the requested issue in this regard; but we cannot say that his refusal to do so in the light of the whole record was such an improper exercise of discretion as requires that the order refusing the issue should be set aside. *Fuller* v. *Sylvia, supra.*

*Order affirmed.*