## J. ALBERT BRACKETT *vs.* GEORGE S. HARRIS.

Middlesex. November 14, 1927. — April 5, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Probate Court,* Jury issues. *Will,* Validity. *Unsound Mind. Undue Influence. Evidence,* Presumptions and burden of proof.

From an offer of proof by the respondent at the hearing of a motion that issues for trial by jury be framed upon a petition for proof of a will, it appeared that the testator, who was about sixty years of age when he executed the will, had been failing mentally and physically prior thereto, his conversation had been incoherent and his conduct peculiar, and for great periods of time his mentality appeared to be that of a child. There was no positive statement in the offer of proof by the contestant that the testator, when he executed his will, did not possess sufficient mental capacity to understand what he was doing. It did appear that he continued in business for about seven years after he executed the will. The will left all the testator's property to a young woman with whom he had been intimate for many years. The testator's next of kin were a brother, the contestant, a nephew and a niece. An issue as to the testator's soundness of mind was denied. *Held,* that the denial was not shown to be plainly wrong.

At the hearing of the motion above described, it further appeared from the offer of proof that the testator was intimate with the young woman, who was nearly thirty years younger than he, for eight years before and nearly eight years after the making of the will; that for two years before he made his will he gave increased attention to her and was constantly with her; that she made increasing demands upon him for money; that

he gave her large sums of money and expensive presents; that the testator entertained an illicit and passionate desire for her; that he assisted and visited her at the time of the birth of an illegitimate child; that she demanded that he make provision for the child and asked him to marry her; that for some nine years before his death his mind became weaker through old age and sensual living, which affected him mentally and physically; that the young woman had a copy of the will which she showed to others; that a few days before his death the testator told his brother he wanted him to have a certain sum; and that nine years before his death he told the brother that he would remember him in his will but that he did not want the young woman to know of it. It did not appear that the testator was the father of the illegitimate child. An issue as to whether the will was procured by the fraud or undue influence of the young woman exercised on the testator was denied. *Held,* that

(1) The burden was on the contestant to show that the testator disposed of his property otherwise than he would have done if he had been left free to exercise his own judgment;

(2) The judge must have found that there were no specific acts which would justify an inference that undue influence was exercised on the testator by the young woman at the time of making the will;

(3) Such finding could not be said plainly to be error, and the order denying the motion must be affirmed.

PETITION, filed in the Probate Court for the county of Middlesex on February 28, 1927, for proof of the will of Charles S. Harris, late of Watertown.

A brother of the testator moved that issues, described in the opinion, be framed for trial by jury. The testator's other next of kin were a nephew and a niece. The motion was heard by *Harris*, J., a stenographer having been appointed under G. L. c. 215, § 18, and was denied. The respondent appealed. A report of an offer of proof by the respondent was made by the judge, material portions of which are stated in the opinion.

The case was submitted on briefs.

*S. O. Reinstein & J. J. Enright,* for the respondent.

*G. E. Healey,* for the petitioner.

BRALEY, J. The will of Charles S. Harris, who died January 19, 1927, having been offered for probate, George S. Harris, a brother of the testator, appeared as a contestant and moved that the following issues be framed for trial to a jury: "Was the instrument purporting to be the last will of said Charles S. Harris dated June 12, 1919, executed according to law?" "Was the said Charles S. Harris at the time

of the execution of the said alleged will of sound mind?" "Was the execution of said alleged will of said Charles S. Harris procured by the fraud or undue influence of Emily Fuller, exercised upon the said Charles S. Harris?" The judge denied the motion and the case is before us on his report which states that no question was raised as to the due execution of the will. A stenographer was appointed pursuant to G. L. c. 215, § 18, and counsel for the contestant made a statement or offer of proof of the evidence upon which it was contended that the issues should be granted, to which no counter offer was made by counsel for the proponent. The question before the judge on the offer of proof, which may be reported to this court in lieu of evidence, was whether there was evidence offered of facts which presented "a real question proper for judicial inquiry, or whether the opposition to the will . . . [was] entirely unfounded in law, resting on the disappointment or anger of a dissatisfied heir, or on his hope, by threatening trouble and expense to the estate, to induce the legatees to buy a settlement." *Fuller* v. *Sylvia,* 240 Mass. 49, 53.

The testator according to the offer of proof was about sixty years of age when the will was executed June 12, 1919, and for at least forty years and during the greater part of his life he had been engaged in theatrical enterprises and when the will was made he was connected with "the Keith Theatrical interests in Boston," with which he continued to be associated until some time in 1926. Prior to the execution of the will, he was failing mentally and physically, and not only during this period was his conversation incoherent but his conduct was peculiar, and for great periods of time his mentality appeared to be the mentality of a child. But the testator continued in business for seven years after the date of the will and there is no positive statement that, when he executed the will, which is simple in form, giving all his property to Emily Fuller, he did not possess sufficient mental capacity to understand what he was doing. The judge in passing on the second issue could consider the weight of the sweeping assertions just referred to with the fact that the testator continued in business for seven years after the will

was made.   The denial of this issue is not shown to be plainly wrong.   See *Whitney* v. *Twombly*, 136 Mass. 145, 146, 147; *Smith* v. *Brewster*, 247 Mass. 395; *Angell* v. *Lighthipe*, 251 Mass. 525.

We pass to the third issue.   The offer of proof recites that the testator became acquainted with Emily Fuller, the sole beneficiary under the will, when she was about ten years of age, and he was nearly forty years old.   When she was fifteen he procured for her the position of ticket seller in a theatre near to the theatre of which he was manager.   The date of the beginning of their acquaintance is not stated, but about 1917 the testator gave increased attention to her, and before the will was made he was "a very nervous mentally and physically old man."   The mother of Emily encouraged their companionship and they were constantly together and became very close friends in the early part of 1917, and he promised that he would put her into moving pictures because of her beauty and attractiveness and expended considerable money in the effort.   During the time of their acquaintance, which included eight years before and eight years after the will was made, they were associated constantly and she became more and more insistent in her demands upon the testator for money, clothes and other luxuries and for intoxicating liquor to the use of which she had become addicted and was a constant user.   The testator entertained an illicit and passionate desire for her although she had "other love affairs," and for more than eighteen months before the date of the will she demanded that the testator make ample provision for her and her illegitimate child born December 11, 1917, and asked him to marry her although he was then a married man, and insisted "that he leave her all his estate."   The testator also gave to her large sums of money, fur coats, valuable jewelry and expensive clothes.   It was further stated that from 1917 to 1926 the testator's mind became weaker and weaker through old age and his sensual mode of living, which had affected him mentally and physically, so that in 1926 he was relieved of his position at the Boston Theatre, and owing to his immoral relationship with Emily Fuller he was easily influenced by

her and she actually exercised improper and undue influence over him in making the will. But there are no statements that the testator was the father of the child, although out of consideration for her condition he made arrangements for her confinement, and while his wife after the date of the will procured a divorce from him, the ground on which it was granted does not appear. The testator also visited Emily Fuller after the birth of the child. If it is assumed under the circumstances that a jury could find the testator's relations with Emily Fuller were illicit, it was not an unnatural act for her to solicit the testator to make provision for her, even to the extent of his entire estate, the amount of which was not stated. The burden was on the contestant to show by expected proof that the testator disposed of his property otherwise than he would have done if he had been left free to exercise his own judgment. *Emery* v. *Emery*, 222 Mass. 439, 441. *Neill* v. *Brackett*, 234 Mass. 367. The contestant also offered to show that before the testator's death Emily Fuller had a copy of the "purported will" which she showed to her mother and other persons, and that the testator told the contestant three or four days before he died that if anything happened to him "he wanted him, George, to have $5,000 of his money; that he had drawn a large sum of money out of the bank and he would send for his brother and give him this money if he felt any worse; that, in 1918, the deceased told his brother that he would remember him in his will, but that he did not want Emily Fuller to know about it because he was afraid of what she might do as she had insisted that he leave her all his estate."

The judge in the exercise of sound judicial discretion was to determine whether there was a real controversy concerning the contention that Emily Fuller had acquired such dominion over the testator as to cause him to exclude the contestant from sharing in the estate. *Adams* v. *Blair*, 255 Mass. 152, 154. *Dresser* v. *Dresser*, 181 Mass. 93. The statement of the testator to the contestant in 1918 was made nine years before his death, and the statement to the contestant during his last sickness not only tends to show the testator's testamentary capacity at that time when he could have revoked

the will and made another will in which he remembered the contestant, but also indicated that being satisfied with what had been done he had no desire to make any change.   We cannot say that the judge plainly erred in finding as he must have done that there were no specific acts which would justify an inference that undue influence was exercised by Emily Fuller at the time of making the will.   *Cook* v. *Mosher*, 243 Mass. 149.   *Smith* v. *Brewster*, 247 Mass. 395.   *Old Colony Trust Co.* v. *Pepper*, 248 Mass. 263.   *Adams* v. *Blair*, 255 Mass. 152.   *Johnson* v. *Talbot*, 255 Mass. 155.   *Union Trust Co. of Springfield* v. *Magenis*, 259 Mass. 409.   The majority of the court are of opinion that the order denying the motion should be

*Affirmed.*