ROSANNA CLAFFEY & another *vs.* KATHERINE A. FENELON.

Middlesex.    January 17, 1928. — May 24, 1928.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & SANDERSON, JJ.

*Probate Court,* Jury issues. *Will,* Validity. *Unsound Mind. Evidence,*
Of state of mind, Presumptions and burden of proof, Inference, Competency, Hospital record. *Practice, Civil,* Requests, rulings and instructions, New trial, Exceptions. *Jury and Jurors. Attorney at Law.*

An issue, framed by a probate court, upon a petition for the proof of a will, for trial in the Superior Court, "Was . . . [the decedent] of sound mind at the time of the execution of the instrument which is propounded as his last will?" was in accordance with the long established practice of the court, and was correct in form and substance; a remark of this court in *Taylor* v. *Creeley,* 257 Mass. 21, at page 29, was not intended to be at variance with the settled usage.

An inaccurate statement in a bill of exceptions of the wording of an issue framed in a probate court for trial in the Superior Court was *held* to be controlled by other parts of the record.

At the trial in the Superior Court of an issue framed in a probate court, "Was . . . [a decedent] of sound mind at the time of the execution of the instrument which is propounded as his last will?" the burden of proof is on the proponents to satisfy the jury by a fair preponderance of the evidence that the decedent was of sound mind at that time, and it rarely can be ruled as matter of law that that burden has been sustained.

At the trial of the issue above described, there was evidence that the alleged will was executed about four and three quarters years before the death of the alleged testator and that his wife and two children were specifically excluded from its provisions, "because of wrong treatment and humiliation to which they have subjected me." Certain experts on mental diseases testified, from observation that ceased between two and three years previous to the execution of the instrument, that the alleged testator was suffering from a "paranoid condition," and harbored delusions as to his wife and family and others that amounted to insanity in a form that was incurable. *Held,* that

(1) Upon the testimony of the experts, an inference was justified that the decedent continued to be in the same condition as they described, or in no better condition, until after the execution of the alleged will;

(2) Requests for rulings to the effect that there was no evidence that the alleged testator was of unsound mind during each of the years beginning with that before the alleged will was executed and ending with that of the testator's death, properly were refused;

(3) A finding was warranted that, notwithstanding the presumption of the sanity of the deceased, his mind was not of normal capacity but

was tainted by morbid and unnatural defects of a character and magnitude to disable him from appreciating his obligations to his immediate family, and that he was not capable of understanding the relation in which he stood to the natural objects of his bounty and to those who ought to be in his mind;

(4) It was proper to refuse a request that the jury be directed to answer the question in the affirmative;

(5) An instruction to the effect that the jury might consider whether the attitude of the decedent toward his wife, daughter and son was so unreasonable, irrational and unjustifiable as to indicate that his mind was impaired, had reference to the state of mind of the decedent as manifested by words and conduct concerning which there was considerable testimony and was not the equivalent of a characterization of the act of giving them nothing under the will and could not have been so understood by the jury; and it did not constitute reversible error;

(6) Instructions defining the presumption of sanity, and to the effect that the jury might consider the evidence concerning the testator and "may also take into consideration this presumption, and give it such weight as they think it deserves," were sufficiently favorable to the petitioners; and a requested modification of the charge, to the effect that the presumption was to be "considered as evidence all the way through," rightly was rejected.

There was evidence, at the trial above described, that about three years before the execution of the alleged will a guardian was appointed for the decedent on the ground that he was an insane person; and that, nearly two years later, a decree was entered discharging the guardian because the decedent had become and was then competent to manage his estate and the guardianship was no longer necessary. The judge refused a request for an instruction to the effect that the decree discharging the guardian was "conclusive adjudication" that the decedent was of sound mind at that time. *Held*, that such request rightly was refused; it related to a portion of the evidence only.

A general exception to the admission, at the trial above described, of records of the Boston State Hospital in which the decedent was confined for several months, could not be supported on the ground that the records were all hearsay and not matters observed by anybody connected with the hospital, there being much in them that plainly was competent; if there were parts which were thought to be objectionable, it was the duty of the objecting party to point them out and ask for their exclusion.

At a trial in the Superior Court, one of the parties filed a motion supported by affidavit that the case be withdrawn from the jury because "during the recess one of the jurymen sitting on the case was in conference with the attorney for the" other party. The motion was heard in chambers. The judge then asked the jury to retire and make examination whether anything was said about the case in the conversation between the attorney and the juror. The jury returned and said they had made an investigation and that there was nothing said about the case. The motion was denied. Exception was saved. *Held*, that, although the conduct of the attorney was reprehensible, and the judge ought himself to have conducted the examination of the juror if he thought any such

examination necessary and to have made up his mind from his own observation, the denial of the motion must have been based upon a finding by the judge that the conversation did not relate to the case and did not prejudice the proponents of the will and would not cause the scales of justice to waver; and, the proceedings being within the discretionary power of the court, no reversible error was shown.

The mere fact, that counsel for one of the parties converses with a member of the jury during the trial of a cause about an indifferent subject without intending to influence the juror's judgment, although a breach of propriety, does not require the declaration of a mistrial and the discharge of the jury.

PETITION, filed in the Probate Court for the county of Middlesex on March 7, 1923, for the proof of the will of Patrick C. Fenelon, late of Newton.

By order of the Probate Court, the issue, stated in the opinion, was framed, and it was tried in the Superior Court before *Hammond*, J.

One provision of the alleged will was as follows: "I purposely omit to leave any part of my estate to my wife, Rose Fenelon, to my daughter, Katherine A. Fenelon, and to my son, John Fenelon, because of wrong treatment and humiliation to which they have subjected me." Material evidence and proceedings at the trial are described in the opinion. The jury answered the issue in the negative. The petitioners alleged exceptions.

*P. J. Donaghue,* (*F. T. Conley* with him,) for the petitioners.

*M. G. R. Halloran,* for the respondent.

RUGG, C.J. This case was tried to a jury in the Superior Court on the issue, "Was Patrick C. Fenelon of sound mind at the time of the execution of the instrument which is propounded as his last will?" This is the issue as answered by the jury and as framed by the Probate Court. A slightly different and less accurate issue recited in the opening paragraph of the bill of exceptions is controlled by other parts of the record. This issue was correct in form and in substance. It was in accordance with long established practice in the courts as declared in *Fuller* v. *Sylvia,* 240 Mass. 49, 54, where the customary forms of issues in will cases are set forth. It conformed to the standard of testamentary capacity fixed by G. L. c. 191, § 1. *McLoughlin* v. *Sheehan,* 250 Mass. 132,

137. Nothing that was said in *Taylor* v. *Creeley*, 257 Mass. 21, 29, was intended to be at variance with this settled usage or to suggest any variation from the issues in use before 1919 "in accordance with the practice established by the supreme judicial court." St. 1919, c. 274, § 7, now G. L. c. 215, § 16.

The instrument offered for probate as the last will and testament of the decedent was executed in March, 1918. He died in December, 1922. By the terms of that instrument the wife, son and daughter of the decedent were not given anything. Most of his estate was distributed among more or less remote collateral kindred.

The request of the proponents of the will that the jury be directed to answer the question in the affirmative was denied rightly. The burden of proof was upon the proponents of the will to satisfy the jury by a fair preponderance of the evidence that the deceased was of sound mind at the time of the execution of the instrument. In this class of cases, as in the great majority of cases where the burden of proof depends upon the weight to be given to oral testimony, it rarely can be ruled as matter of law that that burden has been sustained. *Lockhart* v. *Ferguson*, 243 Mass. 226, 228. *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450, 452, 453, and cases there collected. *Gold* v. *Spector*, 247 Mass. 110. Although there are instances where the facts, in the light of the presumption of sanity, do not raise a disputed question of fact and the court can and ought to rule as matter of law, *Johnson* v. *Jenks*, 253 Mass. 25, *Johnson* v. *Talbot*, 255 Mass. 155, 158, *Taylor* v. *Creeley*, 257 Mass. 21, nevertheless these are exceptional and do not affect the general rule.

There was testimony from experts on mental diseases who had examined the decedent during his life on several occasions. On their testimony a finding would have been warranted to the effect that the deceased was so obsessed with certain ideas and had carried them to such excess that they became delusions; that he was suffering from "a paranoid condition"; that he harbored many illusions as to his family, as to the hospital where he was under restraint for a time, and as to the physicians in charge of him; that he was insane and that the form of insanity from which he suffered

was incurable. There was much testimony as to his delu-
sions respecting his wife and family, which need not be
narrated. The observations of these experts concerning the
decedent ceased between two and three years prior to the
execution of the alleged will; but, upon their testimony as to
the incurable nature of the mental disorder with which he was
afflicted, the inference would be justified that he continued to
be in the same or no better mental condition until after the
date when the instrument was signed. Requests for instruc-
tions numbered 2 to 7 inclusive, to the effect that there was
no evidence that he was of unsound mind during several speci-
fied years,* were denied rightly. If this testimony was be-
lieved by the jury, a finding would have been warranted that,
notwithstanding the presumption of the sanity of the de-
ceased, his mind was not of normal capacity but was tainted
by morbid and unnatural defects of a character and magni-
tude to disable him from appreciating his obligations to his
immediate family, and that he was not capable of understand-
ing the relation in which he stood to the natural objects of his
bounty and to those who ought to be in his mind, and that
he was not free from delusion, which was the effect of disease
and which would lead him to dispose of his property other-
wise than he would have done if he had had a right appre-
ciation of what he was doing. If findings of this general
nature were made, the question put in the issue as framed
rightly ought to have been answered in the negative. *Whit-
ney* v. *Twombly*, 136 Mass. 145, 147. *Becker* v. *Becker*, 238
Mass. 362, 366. *Smith* v. *Brewster*, 247 Mass. 395, 399.
*McLoughlin* v. *Sheehan*, 250 Mass. 132, 138. There was
much evidence introduced by the proponents tending to
show that the testator was of sound mind. That was not
conclusive. Soundness of mind was a question of fact to be
determined by the jury upon conflicting testimony. *Lock-
hart* v. *Ferguson*, 243 Mass. 226. *Flynn* v. *Cunningham*, 244
Mass. 306.

It appeared from probate records that a guardian was
appointed for the decedent on January 5, 1915, on the

---

* 1917, 1918, 1919, 1920, 1921, and 1922 up to the time of his death.

petition of his wife, daughter and son, on the ground that he was an insane person; that the guardian resigned on May 25, 1916; that on December 4, 1916, this resignation was accepted by the court and it was decreed that the guardian be discharged because the decedent had become and was then competent to manage his estate and the guardianship was no longer necessary; that at the hearing on this petition the wife of the decedent alone was represented by counsel; that an appeal from that decree taken by his wife was dismissed on January 25, 1917, and that on January 18, 1918, a decree was entered that the decedent was living apart from his wife for justifiable cause by reason of her desertion. See *Fenelon* v. *Fenelon*, 244 Mass. 14. These proceedings were introduced in evidence without objection. The jury were instructed without exception that these matters might be considered as bearing upon the relations between the decedent and his family. The request for instruction that the decree discharging the guardian was "conclusive adjudication" that the decedent was of sound mind at that time was refused rightly. It related to a fragmentary portion of evidence, with which the judge could not be required to deal specifically. *Ayers* v. *Ratshesky*, 213 Mass. 589, 593. Full instructions were given as to the presumption of sanity and as to what constituted unsoundness of mind. Such a decree is conclusive only as to acts which are required to be done by a guardian and cannot be done by a ward. *Talbot* v. *Chamberlain*, 149 Mass. 57, 59. It is conceivable that one under guardianship as an insane person may still have sufficient mental capacity to make a will, and, conversely, one whose guardian has been discharged may not have sufficient capacity to make a will. *Stone* v. *Damon*, 12 Mass. 488. *Breed* v. *Pratt*, 18 Pick. 115. *May* v. *Bradlee*, 127 Mass. 414. *Chandler Will Case*, 102 Maine, 72, 101. There is nothing inconsistent with this conclusion in *Miller* v. *Miller*, 150 Mass. 111, *Willwerth* v. *Leonard*, 156 Mass. 277, and *Chase* v. *Chase*, 216 Mass. 394, upon which the proponents rely.

There was no error in the refusal to give the twenty-first request of the proponents as to the effect of the presumption of sanity. An accurate definition of that presumption was

stated. Ample instructions were given on the point, concluding with the words that the jury might consider "the will, and the acts and the declarations before the execution of the will, his relations to his family, what he said about them, and they may also take into consideration this presumption [of sanity], and give it such weight as they think it deserves." This was sufficiently favorable to the proponents. The requested modification of the charge, to the effect that the presumption is to be "considered as evidence all the way through," was rightly rejected. *Duggan* v. *Bay State Street Railway*, 230 Mass. 370, 378. *Commonwealth* v. *De Francesco*, 248 Mass. 9, 13. *McLoughlin* v. *Sheehan*, 250 Mass. 132, 137. See *Clifford* v. *Taylor*, 204 Mass. 358.

There was no reversible error in the instruction to the effect that the jury might consider whether the attitude of the decedent toward his wife, daughter and son was so unreasonable, irrational and unjustifiable as to indicate that his mind was impaired. This part of the charge plainly had reference to the state of mind of the decedent as manifested by words and conduct concerning which there was considerable testimony. It was not the equivalent of a characterization of the act of giving them nothing under the will and could not have been so understood by the jury.

It is provided by G. L. c. 111, § 70, that a hospital of the class in which the decedent was confined for a time "shall keep records of the treatment of the cases under their care and the medical history of the same," and by G. L. c. 233, § 79, that such records shall be admissible in evidence in court so far as they "relate to the treatment and medical history of such cases." Records of the Boston State Hospital, in which the decedent was confined for several months, were offered in evidence. A general objection was made on the ground that these records were all hearsay and not matters observed by anybody connected with the hospital. An exception of such nature cannot be supported. Record of the treatment and medical history of an inmate of a hospital for mental diseases must of necessity to a considerable extent be descriptive of conduct and conversations reflective of the state of mind of the patient. There was much in the

record plainly competent. *Raymond* v. *Flint,* 225 Mass. 521. If there were parts which were thought to be objectionable, it was the duty of the objecting party to point them out and ask for their exclusion. *Commonwealth* v. *Johnson,* 199 Mass. 55, 61.

During the trial the petitioners filed a motion supported by affidavit that the case be withdrawn from the jury because "during the recess one of the jurymen sitting on the case was in conference with the attorney for the appellants." The judge thereupon heard the parties in chambers. He then asked the jury to retire and make examination whether anything was said about the case in the conversation between the attorney and the juror. The jury returned and said they had made an investigation and that there was nothing said about the case. The motion was denied.

The conduct of the attorney was reprehensible. An attorney ought at all times to be solicitous to preserve not only the substance of justice but every appearance of propriety. While the record does not disclose what occurred at the hearing before the judge, it is to be inferred that he examined the attorney and must have formed some conclusion as to what had occurred. It would have been better for the judge himself to have conducted the examination of the juror if he thought any such examination necessary and to have made up his mind from his own observation; and he ought to have pursued that course. But the jurymen constituting the panel were a part of the court. They were under an obligation to perform all duties rightly required of them and to make true answers touching their duties as jurors as if they had been put under special oath. The statement by all the jurors of necessity must have included a statement by the juror with whom the conference was had, because he must have joined therein. Such a statement may stand on as good a footing as affidavits of jurors sometimes received by a judge. The mere fact that counsel for one of the parties conversed with a member of the jury during the trial of a cause about an indifferent subject without intending to influence the juror's judgment, although a breach of propriety, does not require the declaration of a mistrial and the discharge

of the jury.   The trial judge must make careful examination and satisfy himself that the rights of the opposite party have not been in any way affected.   Much must be left in such a matter to the sound judicial discretion of the trial judge. We are of opinion that it cannot be said that reversible error occurred.   The denial of the motion must have been based upon a finding by the judge that the conversation did not relate to the case and did not prejudice the proponents of the will and would not cause the scales of justice to waver.   The case at bar falls within the principle of several of our decisions. *Hix* v. *Drury*, 5 Pick. 296, 301.   *Woodward* v. *Leavitt*, 107 Mass. 453, 466.   *Nichols* v. *Nichols*, 136 Mass. 256, 259, 260.   *Burke* v. *Hodge*, 211 Mass. 156, 162.   *Lewis* v. *Lewis*, 220 Mass. 364, 366–369, and cases there reviewed.   *Commonwealth* v. *Capland*, 254 Mass. 556, 560.   *Commonwealth* v. *Friedman*, 256 Mass. 214, 216.   *Dixon* v. *A. J. Cunningham Co.* 257 Mass. 63, 70.   Somewhat more precisely in point are *Vincent* v. *Heenan*, 194 Mich. 316, *Nelson* v. *Kuhfeld*, 158 Minn. 163, *Chesapeake & Ohio Railway* v. *Moore*, 181 Ky. 550, 553.

*Exceptions overruled.*