CAROLINE L. HOWE *vs.* HOWARD S. HOWE.

Essex.    April 2, 1935. — June 28, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, LUMMUS, & QUA, JJ.

*Probate Court,* Jury issues. *Will,* Validity. *Unsound Mind. Undue Influence.*

In a contested will case, expected evidence and medical testimony justified the granting of a motion for a jury issue as to the soundness of mind of the testator, an elderly man suffering from arteriosclerosis

and senile dementia, and an issue as to undue influence exercised by his second wife, whom he had married shortly before the execution of the alleged will.

PETITION, filed in the Probate Court for the county of Essex on October 30, 1933, for proof of a will.

The motion for jury issues was heard by *O'Brien, J.*

*J. J. Ryan, Jr.,* for the petitioner.

*H. C. Thompson,* for the respondent.

CROSBY, J. This is an appeal by the proponent of an instrument presented to the Probate Court in Essex County for probate as the last will of Stephen W. Howe, from the allowance of the contestant's motion to frame issues for a trial by jury as follows: (1) "Was the said Stephen W. Howe at the time of the execution of the said alleged will of sound mind?"; and (2) "Was the execution of said alleged will of said Stephen W. Howe procured by the fraud or undue influence of Caroline L. Howe, exercised upon the said Stephen W. Howe?"

The appellee, Howard S. Howe, a son of the deceased, filed the motion for issues. The appellant, Caroline L. Howe, is the widow of the deceased.

At the hearing before the judge of probate, counsel for both parties made statements of expected proof, and thereafter the judge heard the testimony of two of three physicians who had attended the deceased during the last few years before his death. He came to Haverhill in this Commonwealth with his wife and a young son (the present contestant) when a young man, and lived there until his death. In February, 1932, his wife died. On August 30, 1932, he married the appellant who was then fifty-two years of age, he being seventy-eight years old. After a wedding trip of about two weeks, he returned to his home in Haverhill. The instrument propounded as his will was executed October 29, 1932. He died October 1, 1933.

Counsel for the contestant stated at length what he proposed to show in support of his contentions that the instrument offered for probate was procured by the fraud and undue influence of the decedent's wife, and that he was mentally incompetent to execute a will. It was stated by

counsel that in the summer of 1932, within four or five months after the death of his wife, he changed his habits of living; that medical testimony would be produced showing that for about eight years before his death he had been treated for arteriosclerosis and heart trouble; that he had several attacks and nearly died before he was married the last time; that he went away and was married the last time without the knowledge of his son, or of his sister who had been his housekeeper after the death of his wife; that the first notice his family had of his marriage was the receipt of a post card sent from North Adams, signed "Mr. and Mrs. S. W. Howe"; that prior to that time he had been under the doctor's care continually, and when his physician learned of his taking a long automobile trip after his marriage, and that he had driven his automobile eleven hundred miles, the physician expected he would be ill; that his neighbors and other witnesses would testify as to a change in his condition; that he was taken ill the last of September or first of October, 1932, with his old malady of cerebral arteriosclerosis; that all three of the physicians who attended him agree to this illness; that he had been very ill and from October 10, 1932, did not go out until the following spring, and a greater part of the time had two nurses and three doctors; that most of the time he had Dr. Richardson, who had attended him before his last marriage; that Dr. Bagnol was called on October 11 and 13, 1932, and Dr. Connors was there the first five days in February, 1933; that in that month conservators were appointed for him on the recommendation of Dr. Richardson. It was further stated by counsel that his condition grew steadily worse and that Dr. Bagnol would testify that "his mental condition was very bad"; that no doctor was present when the will was signed; that Dr. Bagnol would testify that at that time "he was not in a mental condition to draw a will or understand his responsibilities towards his loved ones and those around him," and that he was suffering from senile dementia; that sometimes he was apprehensive that people would steal his clothing and asked that it be put away; that he complained of bugs

which he imagined he saw; and that he also imagined he was living in New Hampshire. Other statements made to the judge by counsel for the contestant tended to show that the deceased was not mentally competent to make a valid will.

In addition to the foregoing Dr. Richardson and Dr. Bagnol testified respecting the mental condition of the deceased. Dr. Richardson was the family physician and testified that he had attended the deceased for the four or five years preceding his death; that during these years he slowly became more weak in both mind and body; that there was a gradual deterioration from the time he first saw him until his death; that he had several bad heart attacks prior to October 29, 1932, including one in the middle of October of that year and another in the following November, when he was mentally much worse; that beginning with the middle of October he became more childish, more stubborn or a little less willing to accept advice, being troubled with cerebral arteriosclerosis; that he suffered from this disease, which makes a person less competent mentally, until the end; that he died of bronchial pneumonia; and that he cried at times and had difficulty in November, 1932, in knowing where he was. Dr. Richardson further testified that he had a talk with the deceased respecting his mental condition on November 2, 1933 [1932?]; that the deceased asked him if he (Howe) at that time "was in his right mind . . . [and Dr. Richardson] replied that he was."

Dr. Bagnol testified that he treated the deceased on October 11 and 13, 1932; that with the disease he had involving the brain there is apt to be childishness and stubbornness; and that the disease was not curable. This witness further testified as follows: "I don't remember particular things. I have a very definite impression in my memory but I don't remember particular things . . . he was decidedly aberrant mentally you might say."

Upon the question of undue influence alleged to have been exercised upon the deceased by his widow, whom he married about six months after the death of his wife with-

out the knowledge of any member of his family until the post card was sent from North Adams about the last of August, 1932, before which time he had continually been under a doctor's care, it appears of record that he attempted to execute a will on October 10, 1932, which was much less favorable to his wife than the will of October 29, 1932. It was stated by counsel that the decedent was ill from October 10, 1932, and did not go out of doors until the following spring; that the decedent's son was present on October 10, 1932, when the decedent attempted to make the previous will, but had no knowledge of the will made on October 29 until in November, 1932, when the son asked Mrs. Howe, "There has been a will here hasn't there?" and she said, "He has given me the home and the automobile and $3,000." It was further stated by counsel that at the meeting on October 10, 1932, when the decedent dismissed Mr. Davis who was expected to draft the will, the decedent told him if he wanted to make a will he would call for him again; that neither the son nor any of the decedent's relatives knew about the drawing of any will; that nurses attending the decedent would testify that Mrs. Howe showed great antipathy to the decedent's son; that she told the nurses not to talk to the son, and not to speak to him about his father or invite him to the house, or telephone him when requested by his father to do so; that one of the doctors would testify that when he asked "for symptoms" Mrs. Howe would give them and he would have to tell her he wanted to get the answers from the decedent if he could. Counsel further stated that he had witnesses who would say that before Mrs. Howe's marriage to the decedent she said "that she had an old fellow she might have if she wanted him and she wouldn't have to work. He had enough money"; and that two nurses would testify that Mrs. Howe told them not to leave the bedside when the decedent was talking with his son.

In view of the foregoing offers of proof and other offers made by counsel for the appellee, together with the testimony of Dr. Richardson, the family physician, and of Dr. Bagnol, it cannot be said that the judge erred in framing a

jury issue upon the question of the decedent's mental capacity to make a valid will on October 29, 1932. There was also statement of expected evidence tending to show. that the instrument was procured to be made by the undue influence of the appellant. Although the questions raised are close, we are of opinion that the judge was not plainly wrong in allowing the issues requested. *Union Trust Co. of Springfield* v. *Magenis*, 259 Mass. 409, and cases cited. *Brackett* v. *Harris*, 263 Mass. 334. *Gifford* v. *Patten*, 265 Mass. 362.

*Order granting motion for jury issues affirmed.*