HOWARD W. COWEE *vs.* LEVERETT S. MORTON & others.

Worcester.   September 23, 1957. — November 6, 1957.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & CUTTER, JJ.

*Unsound Mind.   Probate Court,* Jury issues.

No error was shown in a contested will case in denial of a motion for a jury issue as to the soundness of mind of an elderly spinster whose will left the greater part of her estate to the university of which she was a graduate for the teaching of a course on the nature of man, where statements of expected evidence, although showing that she entertained some uncommon beliefs and at times suffered from hallucinations of being annoyed by inmates of a mental institution, also showed that she capably managed her own business affairs, knew the nature and extent of her property, and knew her relatives and considered them in making her will.

PETITION, filed in the Probate Court for the county of Worcester on January 7, 1955, for proof of the will of Harriet Ena Morton, late of Worcester.

A motion for jury issues was heard by *Wahlstrom,* J.

*Stanley G. Barker, (John H. Devine* with him,) for the contestants.

*Henry W. Walker,* for the proponent.

RONAN, J.  This is an appeal from an order of the Probate Court denying a motion for the framing of jury issues, first, whether the instrument purporting to be the last will of Harriett Ena Morton was executed according to law and, second, whether she was "at the time of the execution of the said alleged will of sound mind." The contestants do not now argue that there was error in the denial of the first issue and we confine our discussion to the refusal to grant the second one.

This case was submitted upon the statements of counsel, from which the following facts appear. Miss Morton was a native of Nova Scotia. · After teaching school there for a few years, she attended and graduated in 1894 from Acadia University. She taught high school for many years in Milford and Springfield in this Commonwealth retiring with a pension in 1928 from the teaching staff of the latter city. She lived with her brother Albert and his wife until his death in 1948 and thereafter with the wife until 1952 when she went to a rest home where she thereafter lived with the exception of two periods when she was confined to a hospital. She died on January 4, 1955, in her eighty-eighth year.

· She knew the proponent, Mr. Cowee, for several years. He had acted as counsel for her, as executrix, in settling the estate of her brother Lewis in 1937 to 1940 which estate amounted to $99,000. She also consulted him up to 1947. In 1945 she brought in to Mr. Cowee the draft of a will in her own longhand in which a friend and Mr. Cowee were named as executors. Upon the death of the friend, Miss Morton prepared in 1947 another draft naming Mr. Cowee alone as executor. Both of her drafts were put in evidence.

Each represents a painstaking effort, written in a legible hand and expressed in clear language. She told Mr. Cowee she did not have an opportunity to make a copy of the 1947 draft but she had reread it and "found only one word left out." Both the 1945 and 1947 wills were substantially similar. Her estate amounted to about $63,000. She left the main portion to Acadia University to conduct a course on the nature of man. She had entered into a written agreement on September 29, 1947, with the university to make the gift. She had prepared notes before executing the will of November 4, 1947, calculating the income which the university might anticipate from her bequest. She sent the university on January 8, 1948, the cash part of the bequest amounting to $3,033.34. The bequest was to study the nature of man according to the "Hebrew scriptures, the teaching of Jesus and of modern psychological research, viewing each in relation to Divine Law and of the family as the primary medium through which the ideal of man is realized."

Her brother Albert died in 1948 leaving an estate in excess of $400,000. Miss Morton with others joined in the contest of his will. She was then represented by an attorney who now represents some of the contestants of her will which was executed in 1947. Their principal contention is that Miss Morton was subject to hallucinations that two inmates of a State mental institution were annoying her and that it became necessary to draw the window shades and to put a cloth over the lights to avoid their intrusions. There was considerable correspondence between her Boston attorney and her from 1949 to 1953 in which she complained of the conduct of these two inmates. The contestants proposed to prove that a member of the police department remembered that as far back as 1940 or 1941 Miss Morton would call the police and complain that these two inmates were outside the window and were coming across the field. She had for many years been a student of psychology being interested in "psychism — the theory of a principle of life pervading all nature" and in "psychoism — animal magnetism or hypnotism."

She believed that certain persons had the power to cast spells over her which were indicated by a shortness of breath or a choked feeling.

The proponent offered to show by her account books that she made her own investments, paid her own bills, kept her own checking accounts, had a safety deposit box, and made out her own income tax returns until 1952 when she was prevented by failing eyesight. She insisted upon receipts for funds she had contributed to charitable causes. These account books were kept in detail in good, legible handwriting showing the dividends and the pension checks received, and the deposits and the payments made. She capably took care of all her own business.

She knew what her estate consisted of and how much she had to give away. She knew all her relatives and corresponded with some of them. She said that some of them did not need any money. She remembered others with small gifts. She bore no ill will to any of them. She knew how much each had received from the estates of her brothers Lewis and Albert.

She was confined to a hospital on two occasions, the second and last being with arteriosclerosis of the heart and other complications to which she succumbed on January 4, 1955.

It is settled that in order to allow the framing of an issue there must be shown a genuine and doubtful question of fact supported by evidence of such substantial nature as to afford ground for reasonable expectation of a result favorable to the party seeking the framing of the issue, *Fuller* v. *Sylvia,* 240 Mass. 49, *Wood* v. *McDonald,* 332 Mass. 220; and where as here the case is heard upon the statements of counsel, it is our duty to examine these statements and to decide the case in accordance with our own judgment giving due weight to the decision of the probate judge. *Cook* v. *Mosher,* 243 Mass. 149. There is nothing contained in the will which indicates that Miss Morton did not comprehend the nature and situation of her property and her relation to those who might reasonably expect to

share in her benefactions. She had considered them and explained the reasons why she made the testamentary provisions she did make. Acadia University had granted her a scholarship and she was undoubtedly familiar with the institution. Her desire to have it give a course upon the nature of man was determined long before she made her last will. Months before she had entered into a written agreement with the university to do so, and a few months after the execution of the will she mailed a check to it for the exact amount mentioned in the will. That she might have held religious or theological views not held by the majority of men did not destroy her capacity to make a will. Although there was evidence that she suffered from delusions, the "usual course of her life was sane and intelligent." *Wellman* v. *Carter*, 286 Mass. 237, 247. See *Taylor* v. *Creeley*, 257 Mass. 21, 29–30; *Mitchell* v. *McLaughlin*, 310 Mass. 41. The frequency and duration of attacks of hallucinations were not shown. There was no reference to medical testimony. The hospital records so far as appears manifest no disease affecting her mental faculties. An examination of the entire record does not raise a genuine and real question of fact as to her testamentary capacity. *Whitney* v. *Twombly*, 136 Mass. 145. *Ronan* v. *Moroney*, 313 Mass. 475. *Flynn* v. *Prindeville*, 327 Mass. 266. *Boston Safe Deposit & Trust Co.* v. *Blaisdell*, 333 Mass. 51.

*Order denying jury issues affirmed.*