WORCESTER COUNTY TRUST COMPANY *vs.* JEAN E. CAMPBELL & another.

Worcester.   April 8, 1959. — June 12, 1959.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Unsound Mind.   Probate Court,* Jury issues.

No error was shown in a contested will case in denial of a motion for a jury issue as to the soundness of mind of a widow whose will left the residue of her estate to charity and made no provision for her children "since they have been adequately provided for by my late husband," who had established a substantial trust for their benefit, where, although there was expected evidence of traits of the testatrix which one psychiatrist deemed signs of mental illness, there also was expected evidence that such manifestations were "no evidence whatsoever of mental disease" or of testamentary incapacity and that the testatrix possessed "business acumen" extending into the period after the making of her will.

PETITION, filed in the Probate Court for the county of Worcester on September 10, 1957, for proof of the will of Isabel H. Smith, late of Shrewsbury. ·

A motion for jury issues was heard by *Wahlstrom, J.*

*Saul A. Seder, (Jack L. Wolfson* with him,) for the contestant.

*Francis P. O'Connor, (James A. Crotty* with him,) for the proponent.

WHITTEMORE, J. This is an appeal by Jean E. Campbell, the appealing contestant, from the denial of a motion for jury issues under a petition for the probate of the will of Isabel H. Smith who died September 5, 1957, leaving a will executed March 4, 1953.

The will, which disposed of an estate inventoried by a special administrator at $60,424.80, left nothing to the contestant or to her sister, both adopted daughters and the only children of Mrs. Smith. A codicil of October 30, 1956, made a minor change irrelevant to the issues. The residual gifts were to charity. The will stated: "I make no provision for my daughters, Lois Isabel Beland and Jean Elizabeth Campbell, since they have been adequately provided for by my late husband, William B. Smith." It appeared that this reference was to a trust created by Smith in his lifetime under which each daughter in 1958 was receiving $7,500 a year, and, after attaining the age of thirty-five, would in all probability receive $10,000 a year for life. There is also in the trust a provision for the use of accumulated income in the trustees' discretion for the support and comfort of each daughter, and, in her lifetime, the support, comfort and education of her children.

The statements of counsel showed that Mrs. Smith suffered a cerebral thrombosis May 6, 1955. The contestant does not rely so much on expected testimony of her condition after the shock as on statements that for a long time before 1955 the decedent showed various manifestations of what a psychiatrist who had occasion to observe her in 1952, 1953, 1954 and 1955, but not professionally, deemed signs of mental illness. She showed, it was stated, a depressive reaction, and was reticent, with a rigid and intolerant attitude toward others, and had a tendency to harbor ill will, envy and suspiciousness; "she gave the impression of being a paranoiac personality." It was stated that there would be testimony of numerous manifestations of such traits over the years, including unnatural conduct toward her

children, with constant censure, and unreasonable strictness in their upbringing and miserliness in allowances to them, unjustifiable criticism of her family, "vicious" attacks on relatives, false pride, and a weakness for public approval and acclaim.   But there was also forecast testimony that all of these manifestations were "no evidence whatsoever of mental disease. . . . Paranoia or depression . . . in and of themselves mean absolutely nothing with respect to whether a person is insane or incompetent to make a will. It is not inconsistent to have these conditions and to be very keen, clear, intelligent and understanding at all times." It appeared that there would be substantial testimony of Mrs. Smith's business acumen extending into the period after the making of the will.   There was also the statement that one of the daughters, when a contest was proposed, said to the attorney for the proponent that "My mother was perfectly sane" and expressed emphatic disapproval of the proposal.

The judge in announcing his decision said in part, "First, I am impressed with the fact that the psychiatrists never examined . . . [the decedent]; secondly, the will . . . and the codicil, to no great extent change the prior will; thirdly, the trust created provides rather generously for these children; fourthly, when the documents were made and signed by both Mr. and Mrs. Smith they clearly had their children in mind; . . . fifth, of course I am very much impressed with Mrs. Smith's business acumen. . . ."   These were appropriate comments.   Some weight is to be given to the decision below.   *Clark* v. *McNeil*, 246 Mass. 250, 254–255. *Hannon* v. *Gorman*, 296 Mass. 437, 438.   Although we have not summarized all the prospective testimony we have carefully weighed it and we think the decision below should stand.   For a somewhat similar case see *Cowee* v. *Morton*, 336 Mass. 300.

The understandable distress of the daughters that neither parent had provided substantially for grandchildren or more remote issue is not a basis for allowing the motion.   The entry must be                     *Order denying jury issues affirmed.*